2012 ND 234

**Jennifer Anne KEITA, Plaintiff
and Appellee**

v.

**Mohamed Founeke KEITA, Defendant
and Appellant.**

No. 20110252.

Supreme Court of North Dakota.

Nov. 27, 2012.

Patti Jo Jensen, East Grand Forks, MN, for plaintiff and appellee.

Rebecca C. Graves, St. Paul, MN, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Mohamed Keita appeals from a divorce judgment awarding Jennifer Keita primary residential responsibility for the parties' minor child, granting Mohamed Keita supervised parenting time for the child, denying Mohamed Keita joint decision-making authority for the child, distributing the parties' marital property, awarding Jennifer Keita attorney fees, and reserving jurisdiction for a future spousal support award. We conclude the district court did not err in awarding of attorney fees and distributing property, but we conclude the court erred in awarding supervised parenting time, child support, and in reserving jurisdiction for future spousal support. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] In 2006, Jennifer Keita and Mohamed Keita were married in Atlanta, Georgia. They had one child, born in 2008. In June 2010, the parties separated, and in September 2010, Jennifer Keita began this divorce action against Mohamed Keita. The district court entered a temporary order, granting the parties possession and use of their separate residences and vehicles, awarding Jennifer Keita sole decision-making authority and primary residential responsibility for the parties' child, awarding Mohamed Keita parenting time via webcam or telephone, and implementing restraining provisions regarding contact between the parties. The temporary restraining provisions were the result of a stipulated dismissal of a disorderly conduct restraining order Jennifer Keita had previously obtained against Mohamed Keita in November 2010, which was based on his contact with her via text and voice mail messages.

[¶ 3] After a bench trial, the district court divided the parties' marital property, ordered Mohamed Keita to pay a cash property distribution to Jennifer Keita, awarded Jennifer Keita primary decision-making and residential responsibility for the child, and awarded Mohamed Keita supervised parenting time. The court also ordered Mohamed Keita to pay child support to Jennifer Keita, denied Mohamed Keita's request for a downward deviation of his child support obligation for parenting time expenses, and awarded Jennifer Keita attorney fees. After appealing to this Court, Mohamed Keita asked the district court judge to disqualify herself arguing the judge was biased against him because of his national origin, race, and religion. The district court subsequently concluded it was without jurisdiction to address the issue pending appeal.

II

[¶ 4] Mohamed Keita argues that the district court erred in awarding him supervised parenting time for the child based, in part, upon his status as a Muslim and a citizen of Mali, West Africa.

[¶ 5] Section 14–05–22(2), N.D.C.C., provides that "upon request of the other parent, [the court] shall grant such rights of parenting time as will enable

the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." " 'In awarding [parenting time] to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount.' " *Wolt v. Wolt*, 2010 ND 26, ¶ 38, 778 N.W.2d 786 (quoting *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113); *see* N.D.C.C. § 14–09–06.2 (providing "best interest" factors). A district court's decision on parenting time is a finding of fact, which we review under the clearly erroneous standard of review. *Wolt*, at ¶ 38; *Bertsch*, at ¶ 5. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Wolt*, at ¶ 7 (quotations omitted). A district court's factual findings should be stated with sufficient specificity to enable this Court to understand the basis for its decision. *See Marsden v. Koop*, 2010 ND 196, ¶ 21, 789 N.W.2d 531.

[¶ 6] "[O]ur statutes and case law recognize that [parenting time] with a non-custodial parent may be curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health." *Marquette v. Marquette*, 2006 ND 154, ¶ 9, 719 N.W.2d 321. This Court has said a restriction on parenting time must be supported by a preponderance of the evidence and " 'accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation.' " *Wolt*, 2010 ND 26, ¶ 38, 778 N.W.2d 786 (quoting *Marquette*, at ¶ 9).

[¶ 7] Here, in awarding Mohamed Keita supervised parenting time, the district court considered the best interest factors.

The court found Mohamed Keita is not a United States citizen, but rather a citizen of Mali, West Africa, and he had not been to Mali since 1999. Although Mohamed Keita testified he had permanent residency status since 2008 in the United States, the court found he "offered no documentation" to prove the status and there was "uncertainty" as to his status and "uncertainty" as to the impact the divorce would have on the status. The court found that Mohamed Keita's father had two wives in Mali and is a polygamist, which the Court noted was legal and appropriate in Mali. The court found Mohamed Keita has three siblings who live in Mali and the United States and half-siblings who live in Mali and Canada. Mohamed Keita testified he did not have a significant relationship with his parents, and the court found his extended family did not appear to have a significant, if any, relationship with the child.

[¶ 8] The district court further found the child did not yet have a United States passport and the child's birth certificate was missing. The court found the child had resided with Jennifer Keita since her birth and Jennifer Keita had remained home with the child during the first couple of years Jennifer Keita was a college professor. While the parties lived together, the court found Mohamed Keita spent minimal time with the child due to work and school. The court also found he had very limited contact with the child since the parties' separation in June 2010, no personal contact with the child other than telephonically from July to October 2010, and a supervised visit with the child in October 2010. The court found that from October 2010 until the time of trial, Mohamed Keita had no personal contact with the child and did not request parenting time. The court found, however, that he did have contact with the child via Skype

three times a week after entry of the February 2011 temporary order, which the court found "went well."

[¶ 9] Although the court did not find evidence of domestic violence under N.D.C.C. § 14–09–06.2(1)(j), the court found Mohamed Keita's "angry behaviors" and harassment of Jennifer Keita, necessitating the temporary disorderly conduct restraining order, caused concern for the safety of Jennifer Keita and the child. The district court found three instances when Mohamed Keita had "difficulty controlling his anger" during the marriage. One incident occurred early in the marriage when the parties returned home after an argument and Mohamed Keita broke down or pushed in their apartment door after Jennifer Keita had locked him out. Another incident occurred just prior to their child's birth when Mohamed Keita physically restrained Jennifer Keita from leaving their home late at night. A final incident occurred when Mohamed Keita knocked a book of his writings, described by Jennifer Keita as degrading, out of her hand and scratched her, resulting in a physical altercation and police intervention with no arrests. Jennifer Keita also testified, without specifics, that Mohamed Keita abused her during sexual relations and had no concern for her. Jennifer Keita testified that she continued to be fearful of Mohamed Keita.

[¶ 10] The district court also found that Mohamed Keita had violated the November 2010 temporary disorderly conduct restraining order by sending Jennifer Keita an anniversary card, but there were no charges filed against him. The court also found that prior to the hearing on the permanent disorderly conduct restraining order, the parties stipulated it could be dismissed upon entry of the temporary order in this divorce case, which was issued on February 2011. Jennifer Keita testified that she continues to be fearful of Mohamed Keita. The court also found that Mohamed Keita had used pornography during the marriage, and that he admitted to possessing pornographic DVDs. The court found he admitted the DVDs would be harmful to the child if the child saw them, but the court also found there was no indication the pornography negatively affected the child.

[¶ 11] In awarding supervised parenting time, the district court considered that Mohamed Keita had limited physical contact with the child, that Jennifer Keita was the child's primary care giver, and that Mohamed Keita had not requested any parenting time with the child for six months. However, Mohamed Keita explained his absence, testifying at trial that he believed he was prevented from contact with the child by the temporary restraining order. While the court's findings of Mohamed Keita's alleged lack of involvement in the child's life, his "angry behaviors" and harassment, his possession of pornography, and his failure to provide support may justify supervised visitation, the court's findings here lack sufficient specificity regarding the potential harm to the child with the requisite showing of a likelihood of endangerment to the child's physical or emotional health. The court also found that there was an "additional risk of flight" by Mohamed Keita with the child "due [to] his being a citizen of West Mali, Africa and the uncertainty of his U.S. visa status following the conclusion of the parties' divorce." The court's finding of a "risk of flight" appears to be largely based on "uncertainty" despite Mohamed Keita's undisputed testimony that he has had permanent resident status in the United States since 2008 and has not been to Mali since 1999.

[¶ 12] Although Mohamed Keita contends the district court's findings demon-

strate bias and violate Canon 3(B)(5), N.D.Code Jud. Conduct, Jennifer Keita responds that he failed to make a motion or raise the issue of bias in the district court before filing his appeal, which precludes this Court's review on appeal. *See Frueh v. Frueh*, 2009 ND 155, ¶ 20, 771 N.W.2d 593 ("failure to raise the issue of judicial bias in the [district] court precludes our review on appeal"). Nonetheless, we conclude the district court's finding that Mohamed Keita is a "flight risk" is clearly erroneous on this record and appears to be based on "uncertainty" about Mohamed Keita's immigration status and extended family, in addition to Jennifer Keita's expressed fears. The record does not include specific evidence that Mohamed Keita has an intent to abscond or flee with the child or that he had hindered Jennifer Keita's custody of the child. *Cf. In re Rix*, 161 N.H. 544, 20 A.3d 326, 329 (2011) (trial court did not abuse discretion in permitting father to vacation with child in India, a non-Hague Convention country, in part, when mother's evidence gave no indication father intended to flee with child and not return); *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914, 919 (2009) (trial court did not abuse its discretion in restricting child's travel out of country, when prohibition was not absolute and father once took child out of state without informing mother); *Waliagha v. Kaiser*, 989 So.2d 660, 661 (Fla.Dist.Ct.App.2008) (reversing travel restrictions and holding trial court erred in relying on facts gleaned from Consular Information Sheet and State Department Travel Warning not in evidence); *Puran v. Murray*, 37 A.D.3d 472, 829 N.Y.S.2d 227, 228 (2007) (family court providently exercised discretion to permit father to take child to home country of Guyana when mother offered no proof father threatened to abscond with the child); *In re Marriage of Hatzievgenakis*, 434 N.W.2d 914, 916 (Iowa Ct.App.1988) (reversing visitation restrictions, in part, because no evidence in record other than the mother's fears, and no evidence father thwarted mother's custody); *Mitchell v. Mitchell*, 252 Ga. 46, 311 S.E.2d 456, 457–59 (1984) (trial court had discretion to prohibit obtaining passports, since father would have no legal recourse if mother took children back to United Arab Emirates).

[¶ 13] On this record, we conclude the district court clearly erred in awarding Mohamed Keita parenting time subject to supervision based on findings of uncertainty regarding Mohamed Keita's citizenship status and alleged risk of flight without sufficient evidence in the record and based on insufficiently detailed findings demonstrating the physical or emotional harm to the child likely to result from visitation. We further conclude the court erred in eliminating Jennifer Keita's duty to inform Mohamed Keita of any changes in residential phone number and address "due to the risks associated with [Mohamed Keita] having such information in regard to his potential flight with the minor from the United States." We therefore reverse and remand to the court for sufficient factual findings supporting an appropriate award of parenting time, whether supervised or unsupervised. We also deny Mohamed Keita's request that this case be assigned to a different judge on remand.

### III

[¶ 14] Mohamed Keita argues the district court erred in ordering an upward deviation in child support for daycare expenses and in not considering a downward deviation for his travel expenses to visit his minor child, who had moved with Jennifer Keita to North Dakota from Georgia. Mohamed Keita argues the court failed to consider he only made approximately $37,000 per year and had limited funds to travel from Georgia to North Dakota.

[¶ 15] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. "If the district court fails to comply with the child support guidelines in determining an obligor's child support obligation, the court errs as a matter of law." *Serr v. Serr*, 2008 ND 56, ¶ 18, 746 N.W.2d 416. "The interpretation and proper application of a provision of the child support guidelines is a question of law, fully reviewable on appeal." *Becker v. Becker*, 2011 ND 107, ¶ 12, 799 N.W.2d 53 (quotations omitted). "The failure to properly apply the child support guidelines to the facts involves an error of law." *Id.* (quotations omitted). We will reverse and remand a district court's child support decision if the court does not clearly state how it arrived at the amount of income and level of support. *Id.* at ¶ 13.

[¶ 16] Generally, a child support obligation established under the child support guidelines is presumed to be the correct amount. *See* N.D. Admin. Code § 75–02–04.1–09(1); *Verhey v. McKenzie*, 2009 ND 35, ¶ 9, 763 N.W.2d 113. To rebut the presumptive amount of child support, the party urging a deviation has the burden of proof. *Verhey*, at ¶ 14. "The exclusive list of the criteria for rebutting the presumption is listed at N.D. Admin. Code § 75–02–04.1–09(2)." *Verhey*, at ¶ 14 (quotations omitted). "A court is permitted to deviate from a guideline amount upon proof by a preponderance of the evidence that deviation is appropriate." *Id.* "That deviation must be supported by specific findings that the presumption under the guidelines has been rebutted." *Id.*

(citing N.D.C.C. § 14–09–09.7(3)). At the time of the trial, N.D. Admin. Code § 75–02–04.1–09(2)(i) (2010), provided for a deviation if in the child's best interests and:

The reduced ability of the obligor to provide support due to travel expenses incurred predominantly for the purpose of visiting a child who is the subject of the order taking into consideration the amount of court-ordered visitation and, when such history is available, actual expenses and practices of the parties[.]

[¶ 17] Here, based on calculations under the child support guidelines, the district court concluded Mohamed Keita's resulting child support obligation is $492 per month. The court also granted Jennifer Keita's requested upward deviation in the amount of $200 for daycare costs for a period of two years commencing August 1, 2011, and ending August 31, 2013. The court, however, denied Mohamed Keita's requested downward deviation of $124 per month to compensate him for transportation costs associated with exercising his parenting time. The court found that since the parties had separated in July 2010, Mohamed Keita had only made one trip from Georgia to Minnesota to exercise parenting time. The court further found he had not exercised any parenting time in North Dakota prior to trial. Based on these findings the court found there was little history of actual expenses and practices of Mohamed Keita exercising parenting time and therefore denied his request for a downward deviation due to parenting time travel expenses.

[¶ 18] Mohamed Keita contends the district court erred in denying his request for a downward deviation based on his limited funds, his failure to previously travel to North Dakota to visit his daughter, and an assumption he deliberately did not want to exercise parenting time. He argues the court's decision is not sup-

ported by the evidence or the record. We agree.

[¶ 19] In awarding child support, although the district court acknowledged Mohamed Keita's testimony regarding his expenses to travel to North Dakota, the court refused to consider his travel expenses to exercise parenting time. During trial, Mohamed Keita testified regarding his expenses relating to travel from Georgia to North Dakota incurred for purposes of attending trial. Mohamed Keita testified he was contemplating moving to Minneapolis or Fargo in the future after he was done with school, but there was no dispute that he would need to undertake at least some travel to exercise his supervised parenting time. Although the court found he had not provided receipts, Mohamed Keita testified at trial that his trip to North Dakota had cost about $980 or $1,000, including $235 for his flight, $528 for his room, and $181 for car rental. He also testified that he believed he was precluded from visitation based on the temporary restraining order.

[¶ 20] Even if a history of actual expenses and visitation practices of the parties was not available, particularly in view of the prior restraining order, we believe that in awarding child support under these circumstances, the court erred in failing to consider expenses incurred predominantly for the purpose of visiting the child. We therefore reverse the district court's child support award and remand for further consideration and findings regarding Mohamed Keita's reduced ability to provide support based on the travel expenses predominantly to exercise his parenting time and in consideration of the amount of parenting time awarded.

IV

[¶ 21] Mohamed Keita argues that the district court erred in awarding Jennifer Keita attorney fees, tax exemption rights, and a cash property distribution. He argues the court failed to make sufficient findings or to apply applicable law.

[¶ 22] In a divorce action the district court must make an equitable division of the parties' marital estate and must consider all of the parties' assets in making an equitable distribution of marital property. N.D.C.C. § 14–05–24(1); *Crandall v. Crandall*, 2011 ND 136, ¶ 17, 799 N.W.2d 388. "After including all of the parties' marital assets in the marital estate, the court must consider . . . factors emanating from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in its distribution of the parties' assets." *Crandall*, at ¶ 17. The *Ruff–Fischer* guidelines provide the following factors for the court to consider:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Crandall*, at ¶ 17 (quotations omitted). "The court is not required to make specific findings about each factor, but it must explain the rationale for its decision." *Stephenson v. Stephenson*, 2011 ND 57, ¶ 9, 795 N.W.2d 357.

[¶ 23] Although a district court's property division need not be equal to be equitable, the court must explain a substantial disparity. *Crandall*, 2011 ND

136, ¶ 18, 799 N.W.2d 388. The court's property distribution is treated as a finding of fact, which will not be reversed on appeal unless the findings are clearly erroneous. *Id.* at ¶ 19. Further, the court has authority to allocate income tax dependency exemptions, and its allocations are also reviewed under the clearly erroneous standard of review. *Wigginton v. Wigginton,* 2005 ND 31, ¶ 18, 692 N.W.2d 108 (stating although no findings of fact supported judge's allocation decision, the reasons for the allocation could be determined from the record). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made. *Crandall,* at ¶ 19.

[¶ 24] Here, in distributing the parties' marital property, the district court considered and made findings on the *Ruff–Fischer* guidelines. The court found that the parties are approximately the same age, in their mid-thirties, that both parties are able to be fully employed, that the marriage was of relatively short duration, and that the parties had developed irreconcilable differences, in addition to Mohamed Keita's previously discussed conduct. The court found both parties would suffer a diminished lifestyle following the divorce, but both parties anticipated additional education that would increase their earning abilities and station in life. The court found that Jennifer Keita had a substantial debt consisting mostly of student loans. The court also considered the parties' monthly expenses. The court found that both parties were in good physical health, had no major assets, and had debt. Again the court noted Jennifer Keita had significantly more student loan debt. The court, therefore, awarded Jennifer Keita

$2,000, representing one-half of Mohamed Keita's retirement account, to equalize the parties' assets and debt distribution. Based on our review of the record, we conclude the court's findings are sufficient to enable us to understand the court's decision to grant tax exemptions and a cash property distribution to Jennifer Keita. There is evidence to support the court's findings, and we are not left with a definite and firm conviction the court made a mistake. We, therefore, conclude those findings are not clearly erroneous.

[¶ 25] Under N.D.C.C. § 14–05–23, the district court has discretion to award attorney fees in divorce proceedings. *Reiser v. Reiser,* 2001 ND 6, ¶ 15, 621 N.W.2d 348. We have said that the primary standard governing an attorney fees award under N.D.C.C. § 14–05–23 is consideration of one spouse's needs and the other spouse's ability to pay. *Kelly v. Kelly,* 2011 ND 167, ¶ 34, 806 N.W.2d 133. We have also recognized fault is a consideration in awarding attorney fees only to the extent that one party has unreasonably escalated the fees. *Kelly,* at ¶ 34; *Reiser,* at ¶ 16; *Foreng v. Foreng,* 509 N.W.2d 38, 41 (N.D.1993). "An award of attorney's fees ... will not be set aside on appeal absent an abuse of discretion." *Bertsch,* 2006 ND 31, ¶ 8, 710 N.W.2d 113. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Kelly,* at ¶ 36; *Heller v. Heller,* 367 N.W.2d 179, 184 (N.D.1985).

[¶ 26] The district court found that an award of $3,000 to Jennifer Keita for attorney fees was appropriate. The court again considered the parties' financial situations, finding that any award of attorney fees would be a burden to both. However, the

court also considered the parties' respective fault in escalating fees to justify its award based on additional proceedings necessitated by Mohamed Keita, including Jennifer Keita's motion for entry of a judgment by default, Mohamed Keita's initial challenge to the court's jurisdiction, in addition to the proceedings for the prior restraining order and a motion to compel discovery. The court found that the $3,000 amount did not represent all of Jennifer Keita's increased costs but the court was mindful of Mohamed Keita's ability to pay. Based on our review of the record, we conclude the district court did not abuse its discretion in its award of attorney fees.

## V

[¶ 27] Mohamed Keita argues that the district court erred in reserving the issue of spousal support as a remedy for future noncompliance with the judgment. He claims neither party requested spousal support in the pleadings.

[¶ 28] Under N.D.C.C. § 14–05–24.1, the district court may order a divorcing party to pay spousal support for a period of time. *Paulson v. Paulson*, 2011 ND 159, ¶ 4, 801 N.W.2d 746. In awarding spousal support, the court must consider the *Ruff–Fischer* guidelines. *Paulson*, at ¶ 4. "The court must also consider the needs of the spouse seeking support and the needs and ability to pay of the supporting spouse." *Id.; Nuveen v. Nuveen*, 2011 ND 44, ¶ 3, 795 N.W.2d 308. We have explained that property division and spousal support are interrelated and often must be considered together. *See, e.g., Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 14, 714 N.W.2d 845. We have held a district court does not err in reserving its jurisdiction to grant delayed spousal support if necessary. *Marschner v. Marschner*, 2002 ND 67, ¶ 8, 642 N.W.2d 857;

*see Kopp v. Kopp*, 2001 ND 41, ¶ 5, 622 N.W.2d 726 (court lacks jurisdiction to subsequently award spousal support when the court does not initially award spousal support and does not explicitly reserve jurisdiction); *van Oosting v. van Oosting*, 521 N.W.2d 93, 101 (N.D.1994) (court should retain jurisdiction when there is uncertainty about the future need for spousal support). "The court does not, however, retain continuing jurisdiction to modify a final property distribution." *Kopp*, at ¶ 5.

[¶ 29] Here, the district court reserved jurisdiction over spousal support, stating its concern that Mohamed Keita would not comply with the court's award of a cash property distribution and attorney fees:

10.) [Jennifer Keita] did not seek an award of spousal support in her Complaint. [Mohamed Keita's] Answer and Counterclaim asked that the court deny spousal support to either party. There was mention of spousal support at the time of the hearing but neither party requested the same in their final submissions to the court.

. . . .

7. *SPOUSAL SUPPORT.* [Jennifer Keita's] entitlement to spousal support shall be reserved for further consideration by this court, but only in the event that the Defendant does not make the payments required of him in Paragraphs 10 [Attorney Fees] and 11 [Cash Property Distribution] below. In that event, [Jennifer Keita] shall motion the court for an amendment of the judgment to establish spousal support payable through the State Disbursement Unit until the below awarded sums are paid in full.

[¶ 30] Here, the district court explained it retained jurisdiction, not for purposes of Jennifer Keita's future support needs, but rather to ensure payment of the

judgment. Although we have said that property division and spousal support are interrelated and often must be considered together, we conclude the court erred in reserving jurisdiction only "in the event" of nonpayment of the cash property distribution and attorney fees. Our conclusion is demonstrated by the contingent nature of the spousal support award in the event of nonpayment in the specific amount of cash and attorney fees awarded. We note, however, that statutory provisions exist for the court to provide a remedy when a party fails to comply with the court's property distribution. *See, e.g.,* N.D.C.C. § 14–05–24(2) (court may redistribute property and debts in postjudgment proceeding if party fails to comply with order distributing property and debts); N.D.C.C. § 14–05–25.1 (failure to comply with property distribution constitutes contempt of court and party may also execute on a money judgment).

[¶ 31] We conclude the district court erred in reserving jurisdiction over spousal support to ensure compliance with its property division and attorney fees award. We reverse the court's reservation of jurisdiction for spousal support.

VI

[¶ 32] Jennifer Keita's request for attorney fees for this appeal under N.D.C.C. § 14–05–23 is denied. The judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶ 33] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 34] I agree with the majority that the order requiring the father's visitation be supervised must be reversed, and the mother cannot be absolved of her duty to keep the father informed of her residential phone number and address.

[¶ 35] On remand, I am confident that the district court will issue an order for the father's parenting time conforming with our statutes and case law and that if there is any restriction on parenting time, it will be supported by a preponderance of the evidence accompanied by a detailed demonstration of physical or emotional harm likely to result from unrestricted visitation.

[¶ 36] DALE V. SANDSTROM