Filed 5/14/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 71

Shannon R. Dieterle, Plaintiff and Appellee

v.

Angela L. Dieterle, Defendant and Appellant

No. 20120329

Appeal from the District Court of Sheridan County, South Central Judicial District, the Honorable Donald L. Jorgensen, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Rodney E. Pagel, 1715 Burnt Boat Drive, Madison Suite, Bismarck, N.D. 58503, for plaintiff and appellee.

Lynn M. Boughey, Box 836, Bismarck, N.D. 58502-0836, for defendant and appellant.

Dieterle v. Dieterle

No. 20120329

Kapsner, Justice.

[¶1] Angela Dieterle appeals from a divorce judgment and challenges the district court’s rulings on primary residential responsibility, parenting time, marital property and debt distribution, and spousal support.  We affirm, but remand for the court to complete a parenting plan for the parties.

I

[¶2] Shannon and Angela Dieterle were married on February 20, 2009.  It was Shannon Dieterle’s first marriage and Angela Dieterle’s second marriage, and she had three minor children from previous relationships, one of whom is now an adult.  Shannon Dieterle was employed at Falkirk Mining Company earning approximately $70,000 annually.  Angela Dieterle was self-employed as a freight broker and as a horse trainer and breeder.  During the marriage, the parties had a daughter and purchased a ranch together.  The parties had a domestic altercation in July 2011, and Angela Dieterle was charged with and ultimately convicted of simple assault.  Shannon Dieterle brought this divorce action in August 2011.

[¶3] Following a trial, the district court awarded Shannon Dieterle primary residential responsibility for the parties’ daughter and ordered Angela Dieterle to pay child support.  The court awarded Angela Dieterle parenting time and directed the parties “to develop a parenting plan by and through a parenting coordinator.”  In distributing the marital property and debt, the court, noting the “very short term marriage of the parties,” essentially awarded them the property and debt they each brought into the marriage.  The court ordered the ranch they purchased together be sold and the net proceeds “be shared equally by the parties.”  The property distribution resulted in Shannon Dieterle receiving a net amount of $112,423.31 and Angela Dieterle receiving a net amount of $24,184.04 of the marital estate.  The court also ordered Shannon Dieterle to pay Angela Dieterle rehabilitative spousal support of $750 per month for a period of twelve months.

II

[¶4] Angela Dieterle raises several issues relating to the district court’s award of primary residential responsibility for the parties’ child to Shannon Dieterle.

A

[¶5] Angela Dieterle argues the district court erred in awarding primary residential responsibility for the couple’s daughter to Shannon Dieterle.

[¶6] A district court must award primary residential responsibility to the parent who will better promote the child’s best interests.  
Hammeren v. Hammeren
, 2012 ND 225, ¶ 6, 823 
N.W.2d
 482.  The court has broad discretion in awarding primary residential responsibility, but it must consider all of the relevant best-interest factors under N.D.C.C. § 14-09-06.2(1).  
Deyle v. Deyle
, 2012 ND 248, ¶ 5, 825 
N.W.2d
 245.  We review an award of primary residential responsibility under the clearly erroneous standard of review, which does not allow us to reweigh the evidence, reassess the credibility of witnesses, or substitute our judgment for a district court’s initial decision.  
Martiré v. Martiré
, 2012 ND 197, ¶ 6, 822 
N.W.2d 
450.  A court’s decision awarding primary residential responsibility is a finding of fact which will not be reversed on appeal unless it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made.  
Fonder v. Fonder
, 2012 ND 228, ¶ 16, 823 
N.W.2d
 504.

[¶7] Angela Dieterle first contends the district court, in its ruling on primary residential responsibility, failed to apply the best-interest factors and made no findings of fact regarding those factors.  We have explained that a court need not make separate findings of fact for each of the best-interest factors under N.D.C.C. § 14-09-06.2(1), that a court’s findings regarding one factor may be applicable to another factor, and that a court need not consider irrelevant factors in its decision on primary residential responsibility for a child.  
See
 
Interest of S.R.L.
, 2013 ND 32, ¶ 7.  Although a separate finding is not required for each statutory factor, the court’s findings must contain sufficient specificity to show the factual basis for the decision on primary residential responsibility.  
See
 
Fonder
, 2012 ND 228, ¶ 11, 823 
N.W.2d
 504; 
Hammeren
, 2012 ND 225, ¶ 7, 823 
N.W.2d
 482; 
Miller v. Mees
, 2011 ND 166, ¶ 12, 802 
N.W.2d
 153.  A court’s findings of fact are sufficient if they afford a clear understanding of the court’s decision and assist the appellate court in conducting its review.  
See
 
Rothberg v. Rothberg
, 2006 ND 65, ¶ 14, 711 
N.W.2d
 219.

[¶8] In its decision awarding primary residential responsibility for the parties’ child to Shannon Dieterle, the district court did not cite N.D.C.C. § 14-09-06.2(1) or specifically refer by name to the best-interest factors.  Rather, the court found:

Throughout the Defendant’s relationships with adult males, she has an established history of terminating relationships after approximately two years, and alleging domestic violence and alcohol abuse on the part of her former partners.  Defendant has secured various domestic violence protection orders on a temporary basis, with the issuing Court terminating the same prior to granting permanent status for such protection orders.

Defendant has also engaged in patterns of verbal abuse towards her male partners when they fail to meet the Defendant’s expectations. More recently and in the current marriage of the parties, Defendant has routinely engaged in profane verbal abuse of the Plaintiff and has extended the same to her adult son.  Prior to Dillon achieving adulthood, a child protective service investigation determined the Defendant to have abused her son Dillon by striking him.  In Defendant’s current relationship with Shannon Dieterle, the Defendant was convicted of simple assault on June 15, 2012, in the District Court, Sheridan County, North Dakota.  That conviction arose when the Defendant struck the Plaintiff and in addition thereto bit the [Plaintiff] upon the upper chest area while the Defendant was in a fit of anger and Plaintiff [was] attempting to restrain her.

The Defendant’s conduct with respect to her three older children who are not from the marriage herein, is relevant to this domestic relations litigation in that said conduct is illustrative of Defendant’s willful pattern to manipulate and even interfere in parenting time by the biological fathers of said children.  Defendant has willfully and knowingly attempted to manipulate law enforcement authorities to restrain the biological fathers of said children from having routine parenting time with the minor children.  Defendant has also asserted unsubstantiated allegations against the Plaintiff in efforts to manipulate this Court in prohibiting the Plaintiff from routine visitation with the minor child, B.D., and further employing a protection order in an effort to diminish Plaintiff’s standing before this Court.  The foregoing conduct of the Defendant has destroyed her credibility with this Court when not verified by outside sources.

The evidence of domestic violence presented to this Court, together with Defendant’s behavioral patterns in the manipulation and interference with parenting time, precludes this Court from placement of the minor child B.D. in the primary parenting responsibility with the Defendant.

Defendant’[s] allegations of domestic violence and the statements of Defendant’s 13-year-old twin daughters are not credible to establish the same.  However, Defendant’s encouragement of her young daughters to become involved in this divorce action in this manner does support the Court’s finding that Defendant will utilize other persons to serve her purposes.

 

[¶9] Naturally, it would have been preferable had the district court listed the statutory best-interest factors in its analysis and stated which factors were applicable and which were not.  The court’s findings of fact nevertheless afford us a clear understanding of its decision.  It is obvious that the court found the controlling best-

interest factors in this case were N.D.C.C. § 14-09-06.2(1)(e) and (j), which address the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, and evidence of domestic violence, respectively.  Not only is parental alienation under N.D.C.C. § 14-

09-06.2(1)(e) a “significant factor” in determining primary residential responsibility, 
Doll v. Doll
, 2011 ND 24, ¶ 27, 794 
N.W.2d
 425, this Court has said “a parent who willfully alienates a child from the other parent may not be awarded custody based on that alienation.”  
McAdams v. McAdams
, 530 
N.W.2d
 647, 650 (N.D. 1995); 
see also
 
Martiré
, 2012 ND 197, ¶ 17, 822 
N.W.2d 
450, and cases collected therein.  Furthermore, although there is a rebuttable presumption under N.D.C.C. § 14-09-

06.2(1)(j) that a parent who has perpetrated domestic violence may not be awarded primary residential responsibility, evidence of domestic violence that does not trigger the presumption may still be considered in awarding primary residential responsibility.  
See, e.g.
, 
Wolt v. Wolt
, 2010 ND 26, ¶ 33, 778 
N.W.2d
 786; 
Wessman v. Wessman
, 2008 ND 62, ¶ 16, 747 
N.W.2d
 85.  The court here did not find that the rebuttable presumption applied, but certainly considered the evidence of domestic violence in arriving at its decision.  

[¶10] The record abundantly supports the district court’s findings on alienation and domestic violence.  Angela Dieterle’s adult son testified about the verbal and physical abuse she inflicted on him while living with her, including an altercation in which she bit him shortly before her arrest for simple assault against Shannon Dieterle.  Several child protection reports were filed against Angela Dieterle involving emotional, psychological, and physical abuse and neglect concerning her son in which services were required.  Shannon Dieterle testified about his altercations with Angela Dieterle.  The testimony and report of the parenting investigator, who recommended Shannon Dieterle be granted primary residential responsibility, establish in detail that Angela Dieterle has lied to investigators and authorities about domestic violence and has coached her teenage daughters about what to tell investigators.  The father of the teenage daughters reported to Social Services that Angela Dieterle would not allow him to see the girls unless he wrote an affidavit stating that Shannon Dieterle was abusive.  Angela Dieterle has been warned by Social Services to stop “polarizing the children against their fathers.”  The investigator reported she had been informed that “Angela has put the fear of Shannon in the girls.”  There is evidence that Angela Dieterle accused Shannon Dieterle of violating a temporary protection order, but law enforcement authorities determined he could not have done so because he was in Bismarck at the time of the alleged violation.  The parenting investigator, like the district court, was troubled by Angela Dieterle’s lack of credibility, noting in the report that “of concern is Angela’s continued allegation that the therapist for BD has stated that she feels BD’s behavior is due to neglect and trauma, Ang[ela] was not told this by the therapist and received a letter stating as such from social services.  She continues to make this statement to the Court.”

[¶11] Angela Dieterle argues the district court erred in disregarding allegations of domestic violence committed by Shannon Dieterle made by her and the teenage daughters on the ground they were “not credible.”  We have often said that a district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses, 
see, e.g.
, 
Eberle v. Eberle
, 2010 ND 107, ¶ 17, 783 
N.W.2d 
 254, and that we will not reassess the credibility of witnesses.  
See, e.g.
, 
Martiré
, 2012 ND 197, ¶ 6, 822 
N.W.2d
 450.  The circumstances in this case go far beyond the district court’s ability to observe the credibility and demeanor of persons testifying.  The court’s finding that these witnesses lack credibility is supported by the evidence in the record.

[¶12] We are satisfied that the district court applied the relevant best-interest factors, and we conclude the court’s award of primary residential responsibility for the parties’ child to Shannon Dieterle is not clearly erroneous.

B

[¶13] Angela Dieterle argues the district court’s use of a parenting coordinator to develop and implement a parenting plan constituted an improper delegation of judicial power.

[¶14] In its decision, the district court said:

Defendant shall be entitled to parenting time with B.D. on a weekly basis, such parenting time occurring when the Plaintiff is employed. In addition to weekly parenting time, Defendant shall be entitled to weekend parenting time on two weekends of each month, again coordinated with Plaintiff’s employment.  The parties shall also rotate alternate holidays for parenting time.  Upon the child’s entry into a regular academic school term, the parties shall share equally the Christmas holiday with the minor child.  Each of Plaintiff and Defendant shall be entitled to exclusive parenting time with the minor child for one week at a time during the summer months and when the parent is exercising their vacation time from employment.  Extended parenting time shall be coordinated with the non-parenting parent to include the whereabouts of the child during such extended parenting time.  The parties hereto are expressly directed to develop a parenting plan by and through a parenting coordinator, and shall have the same accomplished not later than August 1, 2012.  Costs for the services of said parenting coordinator shall be shared equally between the parties.

 

[¶15] In its order appointing a parenting coordinator, the district court said:

IT IS SPECIFICALLY THE ORDER OF THE COURT that a parenting coordinator shall:

1. Develop a parenting plan which addresses and makes provision for the needs of the minor child while the Plaintiff is engaged in his employment, and provides reasonable opportunity for the Defendant to provide child care for B.D. when the Plaintiff is so employed.

2. That the parenting time of the Defendant with the minor child shall be structured so as to allow the minor child to share time with her sisters when they are not devoted to school activities.

3. That the parenting coordinator shall identify appropriate parent training programs for each of Plaintiff and Defendant to successfully complete, with said parent education and training designed to enhance the capacity of each of Plaintiff and Defendant to best meet the needs of the minor child B.D.

4. That the parenting coordinator shall also emphasize that each of Plaintiff and Defendant shall refrain from alcohol usage when they have parenting responsibility for the minor child B.D.

IT IS THE REQEUST [sic] OF THE COURT that the parenting coordinator file with the Clerk of Court a parenting plan as soon as the same is available, but not later than September 1, 2012.  Periodic reports by the parent coordinator may be made to the Court at the discretion of the parenting coordinator.

 

[¶16] The court’s order is not an impermissible delegation of authority to the parenting coordinator.  Rather, it is a directive to the parties that the parties have a period of time to develop the parenting plan envisioned by N.D.C.C. § 14-09-30, working with the parenting coordinator.  The district court gave specific directives based upon the needs of these parties from the evidence the court heard but allowed the parties to develop a more specific plan within the time frame.

[¶17] The parenting coordinator later requested the district court clarify part of its decision, and the court explained in an addendum “that Angela Dieterle be granted first opportunity to provide parenting time for the minor child when the Plaintiff is unable to do so.  Should the Defendant be unable to or unavailable, Plaintiff shall then have the discretion to employ child care as he deems appropriate.”  After the parenting coordinator prepared the plan, Angela Dieterle, on September 28, 2012, filed an objection with the court proposing numerous changes to the parenting plan.  The record does not reflect that the court took any action on Angela Dieterle’s objections to the plan.

[¶18] The district court, “upon its own motion or by motion or agreement of the parties, may appoint a parenting coordinator to assist the parties in resolving issues or disputes related to parenting time.”  N.D.C.C. § 14-09.2-02.  A parenting coordinator “[s]hall attempt to resolve a parenting time dispute by facilitating negotiations between the parties to promote settlement and, if it becomes apparent that the dispute cannot be resolved by an agreement of the parties, shall make a decision resolving the dispute.”  N.D.C.C. § 14-09.2-01(3).  The parenting coordinator must “[f]acilitate the resolution of disputes regarding the implementation of the parenting plan, the schedule, or parenting time issues provided such resolution does not involve a substantive change to the court’s order.”  N.D.R.Ct. 8.11(c)(3).  “An agreement of the parties or a decision of the parenting coordinator is binding on the parties until further order of the court.”  N.D.C.C. § 14-09.2-04.  “If the parents are unable to agree on a parenting plan, the court shall issue a parenting plan considering the best interests of the child.”  N.D.C.C. § 14-09-30.

[¶19] Allowing neutral individuals to resolve disputes between the parties, so long as access by the parties to the district court is allowed for ultimate resolution of the dispute, is not an improper delegation of judicial power.  
See generally
 
Wolt
, 2010 ND 26, ¶ 40, 778 
N.W.2d
 786.  For example, in 
Yates v. Yates
, 963 A.2d 535, 540-

41 (Pa. Sup. Ct. 2008), the Superior Court of Pennsylvania ruled that the appointment of a parenting coordinator to resolve ancillary custody disputes was not an improper delegation of judicial authority.  The court noted that “if the parties are dissatisfied with the parenting coordinator’s decision, they can appeal it to the trial court” for de novo review.  
Id.
 at 541.  Similarly, under North Dakota law a parenting coordinator has no authority to make substantive changes to a court’s order, and if a party disagrees with the devised parenting plan and brings that disagreement to the court’s attention, it becomes the duty of the court to “issue a parenting plan considering the best interests of the child.”  N.D.C.C. § 14-09-30.

[¶20] The problem in this case is not an improper delegation of judicial power, but a failure of the district court to act on Angela Dieterle’s filed objections to the parenting plan submitted by the parenting coordinator.  We therefore remand to the district court to issue a parenting plan consistent with the best interests of the child under N.D.C.C. § 14-09-30.

III

[¶21] Angela Dieterle challenges several aspects of the district court’s distribution of marital property and debt.

A

[¶22] Angela Dieterle argues the district court erred in distributing the marital property and debt.

[¶23] In 
Keita v. Keita
, 2012 ND 234, ¶ 22, 823 
N.W.2d
 726, we explained:

In a divorce action the district court must make an equitable division of the parties’ marital estate and must consider all of the parties’ assets in making an equitable distribution of marital property. N.D.C.C. § 14-05-24(1); 
Crandall v. Crandall
, 2011 ND 136, ¶ 17, 799 N.W.2d 388.  “After including all of the parties’ marital assets in the marital estate, the court must consider . . . factors emanating from 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952), and 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966), in its distribution of the parties’ assets.” 
Crandall
, at ¶ 17.  The 
Ruff-Fischer
 guidelines provide the following factors for the court to consider:

 

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.  The trial court is not required to make specific findings, but it must specify a rationale for its determination.

 

Crandall
, at ¶ 17 (quotations omitted).  “The court is not required to make specific findings about each factor, but it must explain the rationale for its decision.”  
Stephenson v. Stephenson
, 2011 ND 57, ¶ 9, 795 N.W.2d 357.

 

A district court’s property distribution is treated as a finding of fact, which will not be reversed on appeal unless the findings are clearly erroneous.  
Keita
, at ¶ 23.

[¶24] In its discussion of the marital property and debt distribution, the district court did not specifically refer to the 
Ruff-Fischer
 guidelines, but said:

This is a very short term marriage of the parties with neither party having materially changed their respective property interests.  The Plaintiff has, throughout the two years and five months of marriage to Defendant, supported not only the Defendant, but also her three children from other relationships.  At the time of the parties’ marriage, Defendant had substantial debt that the Plaintiff helped to pay and, simultaneously, allowed the Defendant to sell her residence at Balfour and use the sales proceeds as Defendant elected.

The primary asset of the parties acquired during the marriage is the 170-acre ranch/residence, which the parties agree has a value of $208,000 and upon which there are two loans totaling $131,025.16, leaving a net value of $76,974.84.  While Defendant seeks to acquire said ranch/residence, there is no evidence that the Defendant has the financial income to purchase the Plaintiff’s one-half interest.

 

The court ordered that the ranch be sold and the net proceeds “be shared equally by the parties.”  The court otherwise generally awarded each party the property and debt they brought into the marriage.

[¶25] Angela Dieterle argues the district court “failed to address the factors that must be addressed.”  Although the court did not recite the 
Ruff-Fischer
 guidelines, the court referenced throughout its decision the parties’ earning abilities, their conduct during the marriage, property accumulated before and during the marriage, and emphasized the “very short” duration of the marriage.  We have often said that while a long-term marriage generally supports an equal division of property, a court may unequally divide property in a short-term marriage and award the parties what each brought into the marriage.  
See, e.g.
, 
Ulsaker v. White
, 2006 ND 133, ¶ 14, 717 N.W.2d 567; 
Horner v. Horner
, 2004 ND 165, ¶ 12, 686 N.W.2d 131.  This is what the court did in this case.

[¶26] Angela Dieterle contends the district court failed to consider her testimony that Shannon Dieterle insisted that she quit her job as a freight broker when they got married.  However, Shannon Dieterle testified to the contrary that he did not encourage Angela Dieterle to quit her job and the decision was hers alone.  The court obviously rejected Angela Dieterle’s testimony.  Angela Dieterle argues she should have been awarded the ranch because both parties testified she should be allowed to remain on the ranch.  However, Shannon Dieterle testified that Angela Dieterle could keep the ranch if she paid him one-half of the equity in the ranch, and if she could not pay it, the ranch should be sold.  The court found Angela Dieterle did not have the financial ability to purchase Shannon Dieterle’s interest in the ranch, and that finding is not clearly erroneous.

[¶27] We conclude the district court’s distribution of marital property and debt is not clearly erroneous.

B

[¶28] Angela Dieterle argues the district court’s property distribution contains “numerous and obvious mistakes,” including some items of property that were awarded to the wrong party, some items that were awarded to both parties, and other items that were not awarded to anyone.  Angela Dieterle’s attorney sent a letter to the court pointing out the discrepancies, and Shannon Dieterle’s attorney responded by letter to the court.  The judge’s court reporter sent an email to the attorneys for the parties stating the judge wanted a motion to amend the findings and a hearing on the matter, unless the parties could otherwise agree.  The parties did not file any motions.

[¶29] This Court strongly discourages “litigation by letter” procedures in the district court.  
Lautt v. Lautt
, 2006 ND 161, ¶¶ 5, 10, 718 N.W.2d 563.  Without a proper motion before it, the court did not err in refusing to address the issues.

IV

[¶30] Angela Dieterle argues the district court’s spousal support award of $750 per month for twelve months is insufficient in amount and duration.

[¶31] Rehabilitative spousal support is awarded to equalize the burden of divorce or to restore an economically disadvantaged spouse to independent status by providing that spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.  
See, e.g.
, 
Becker v. Becker
, 2011 ND 107, ¶ 29, 799 N.W.2d 53.  In determining whether an award of spousal support is appropriate, a district court must consider the relevant factors under the 
Ruff-Fischer
 guidelines.  
See, e.g.
, 
Duff v. Kearns-Duff
, 2010 ND 247, ¶ 14, 792 N.W.2d 916.  An award of spousal support is a finding of fact that will not be set aside on appeal unless it is clearly erroneous.  
See, e.g.
, 
Becker
, at ¶ 27.

[¶32] Under the circumstances, we conclude the district court’s award of rehabilitative spousal support is not clearly erroneous.

V

[¶33] Angela Dieterle argues the district court judge should not be allowed to continue on this case on remand because the judge has “demonstrated bias” through his rulings against her in these divorce proceedings.

[¶34] Adverse rulings alone are not evidence of judicial bias or partiality.  
See, e.g.
, 
Holkesvig v. Welte
, 2012 ND 14, ¶ 7, 809 N.W.2d 323.  Angela Dieterle’s argument is without merit.

VI

[¶35] Angela Dieterle moved in this Court to require the attorney for Shannon Dieterle to revise his appellate brief to bring it into compliance with N.D.R.App.P. 28.

[¶36] Under N.D.R.App.P. 28, appellate briefs must contain references to the evidentiary record supporting statements of disputed facts.  
See
 
State v. Noack
, 2007 ND 82, ¶ 9, 732 N.W.2d 389.  This Court may impose sanctions for a failure to comply with the minimum requirements of the rule, including dismissal of an appellant’s appeal.  
See
 
J.P. v. Stark Cnty. Soc. Servs. Bd.
, 2007 ND 140, ¶ 7, 737 N.W.2d 627; 
Noack
, at ¶¶ 9-10.

[¶37] The appellee’s brief in this case does not cite to the evidentiary record to support all of Shannon Dieterle’s versions of disputed facts, and therefore, is not in compliance with N.D.R.App.P. 28.  But the appellant’s brief also does not cite to the evidentiary record to support all of Angela Dieterle’s versions of disputed facts and is not in compliance with the rule as well.  Under these circumstances, we decline to impose sanctions and “caution the parties to comply with all the requirements for appellate briefs in future cases.”  
J.P.
, 2007 ND 140, ¶ 8, 737 N.W.2d 627.

[¶38] We deny Angela Dieterle’s motion.

VII

[¶39] It is unnecessary to address other arguments raised because they are either unnecessary to the decision or are without merit.  We affirm the divorce judgment, but remand for the district court to complete a parenting plan for the parties.

[¶40] Carol Ronning Kapsner

Mary Muehlen Maring

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

I concur in the result.

Daniel J. Crothers