2011 ND 136

**Heidi Jo CRANDALL, Plaintiff, Appellee and Cross–Appellant**

**v.**

**Chad Von CRANDALL, Defendant, Appellant and Cross–Appellee.**

**No. 20100402.**

Supreme Court of North Dakota.

July 13, 2011.

Erica Leigh Chisholm, Wahpeton, N.D., for plaintiff, appellee and cross-appellant.

Tracey Rae Lindberg, Breckenridge, MN, for defendant, appellant and cross-appellee.

CROTHERS, Justice.

[¶ 1] Chad Crandall appeals and Heidi Crandall cross appeals from a divorce judgment distributing the parties' marital property, awarding Chad Crandall primary residential responsibility for the parties' three minor children and ordering Chad Crandall to pay Heidi Crandall $680 per month in child support for the three children. We affirm the district court's property distribution but reverse the court's child support decision and remand for further proceedings.

I

[¶ 2] The parties were married in 1995 and have three children together. In July 2009, Heidi Crandall brought this divorce action against Chad Crandall. At the time of a September 2010 trial, Chad Crandall was 43 years old and worked for Bobcat in Gwinner, and Heidi Crandall was 37 and operated a day-care facility in Gwinner. After trial, the district court awarded Chad Crandall primary residential responsibility for the parties' three children and also ordered him to pay Heidi Crandall $680 per month in child support beginning on December 10, 2010, finding that "[c]onsidering the child support guidelines for both parents and the amount of time the children will be with each parent, the Court concludes that Chad [Crandall] shall pay child support to Heidi [Crandall] in the amount of $680 per month." The court also distributed the parties' marital property, stating that after taking "away the value of Chad [Crandall's] 401(k) he is awarded personal property of $44,244.99 and Heidi [Crandall] is awarded property

of $42,701.00. The debt awarded to Heidi [Crandall] is $51,681.48 and the debt awarded to Chad [Crandall] is $46,978.98. The Court finds that this is a fair and equitable distribution." The district court denied Chad Crandall's motion to stay his payment of child support pending appeal.

II

[¶ 3] Chad Crandall argues the district court erred in not requiring Heidi Crandall to pay him child support and by instead ordering him to pay her child support. He asserts the child support guidelines do not contemplate requiring the custodial parent to pay the noncustodial parent child support, and he contends the court failed to adequately explain its methodology for ordering him to pay Heidi Crandall child support. Heidi Crandall responds that N.D. Admin. Code § 75–02–04.1–09(2)(j) allows for a deviation from the child support guidelines based on "[t]he reduced ability of the obligor to pay child support due to a situation, over which the obligor has little or no control, which requires the obligor to incur a continued or fixed expense for other than subsistence needs, work expenses, or daily living expenses, and which is not otherwise described in this subsection." She argues the court exercised its discretion in awarding her child support after making a finding the award was based on a consideration of the child support guidelines and the amount of time each parent will spend with the children.

[¶ 4] In *Buchholz v. Buchholz*, we described the standards of review for child support determinations:

"Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly

erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.' When a district court *may* do something, it is generally a matter of discretion. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably. A district court errs as a matter of law when it fails to make required findings or required findings are not intelligible.

"As a matter of law, the district court must clearly set forth how it arrived at the amount of income and level of support. 'A proper finding of net income is essential to a determination of the correct amount of child support under the guidelines.' N.D. Admin. Code § 75–02–04.1–02(10) requires 'a child support order include a statement of the obligor's net income and "how that net income was determined." ' 'A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines.' Even where the district court used 'vague figures … despite the fact it appears adequate evidence was admitted for the trial court to make a precise finding,' we reverse."

1999 ND 36, ¶¶ 11–12, 590 N.W.2d 215 (citations and footnote omitted) (emphasis in original).

[¶ 5] The issue here is whether our law authorizes a district court to require a parent awarded primary residential re-sponsibility of a child to pay child support to a parent who is not awarded primary residential responsibility of the child. Under N.D.C.C. § 14–09–33, a custodial parent or parent with primary residential re-sponsibility "means a parent with more than fifty percent of the residential re-sponsibility" for a child and a noncustodial parent "means a parent with less than fifty percent of the residential responsibility" for a child. *See also* N.D.C.C. § 14–09–00.1(6) and (7) (defining "primary residential responsibility" to mean "a parent with more than fifty percent of the residential responsibility" and defining "residential re-sponsibility" to mean "a parent's responsibility to provide a home for the child"). Parents have a mutual duty of support for their children, and a "court may compel either or both parents to provide for the support of their children." N.D.C.C. § 14–09–08. Under N.D.C.C. § 14–09–09.7(1), the Department of Human Services is authorized to "establish child support guidelines to assist courts in determining the amount a parent should be expected to contribute toward the support of the child." The Department has promulgated child support guidelines in N.D. Admin. Code ch. 75–02–04.1.

[¶ 6] Administrative regulations are statutory derivatives and are construed using rules of statutory construction. *Gofor Oil, Inc. v. State,* 427 N.W.2d 104, 108 (N.D.1988). " 'Statutory interpretation is a question of law, fully reviewable on appeal.' " *Landsiedel v. Director, North Dakota Dep't of Transp.,* 2009 ND 196, ¶ 7, 774 N.W.2d 645 (quoting *Schaaf v. North Dakota Dep't of Transp.,* 2009 ND 145, ¶ 11, 771 N.W.2d 237). The objective in interpreting a statute is to determine legislative intent by first looking at the language of the statute. *Amerada Hess Corp. v. State ex rel. Tax Comm'r,* 2005 ND 155, ¶ 12, 704 N.W.2d 8. " 'Words in a

statute are given their plain, ordinary, and commonly understood meaning, unless defined in the code or unless the drafters clearly intended otherwise. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02[–07]. If the language of a statute is clear and unambiguous, the letter of the statute cannot "be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05.'" *Arnegard v. Cayko*, 2010 ND 83, ¶ 10, 782 N.W.2d 54 (quoting *North Dakota Dep't of Labor v. Matrix Props. Corp.*, 2009 ND 137, ¶ 8, 770 N.W.2d 290).

[¶ 7] The child support guidelines define a custodial parent as "a parent who acts as the primary caregiver on a regular basis for a proportion of time greater than the obligor, regardless of custody descriptions such as 'shared' or 'joint' custody given in relevant judgments." N.D. Admin. Code § 75–02–04.1–01(4). The calculation of a child support obligation "assume[s] that the care given to the child during temporary periods when the child resides with the obligor or the obligor's relatives do not substitute for the child support obligation." N.D. Admin. Code § 75–02–04.1–02(2). The general instructions for determining child support contemplate the primary caregiving parent is the obligee and is owed a duty of support. *See* N.D. Admin. Code §§ 75–02–04.1–01(8) and (9) (defining obligee and obligor) and 75–02–04.1–02 (general instructions for determining support amount). *See also* N.D.C.C. § 14–09–09.10(12) and (13) (defining obligor and obligee). The parent who is not the primary caregiver is the obligor and the person owing a duty of support. *Id.*

[¶ 8] The guidelines provide a schedule of child support amounts based on the obligor's net income. *See* N.D. Admin. Code § 75–02–04.1–10. The scheduled amount "is presumed to be the correct amount of child support." N.D. Admin. Code 75–02–04.1–09(1). The guidelines also provide criteria for determining child support for split custody situations, N.D. Admin. Code § 75–02–04.1–03, for calculating a minimum duty of support where an obligor has any income, N.D. Admin. Code § 75–02–04.1–04, for making adjustments for extended visitation, N.D. Admin. Code § 75–02–04.1–08.1, and for rebutting the guideline amount. N.D. Admin.Code § 75–02–04.1–09.

[¶ 9] Except as provided in N.D. Admin. Code § 75–02–04.1–08.2 for equal custody situations, "[c]alculation of child support obligations under the guidelines 'consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child's care.'" *Richter v. Houser*, 1999 ND 147, ¶ 22, 598 N.W.2d 193 (quoting N.D. Admin. Code § 75–02–04.1–02(1)). The child support guidelines describe a procedure for calculating an offsetting child support obligation when parents have been awarded "equal physical custody," which means each parent has physical custody of the child "exactly fifty percent of the time." N.D. Admin. Code § 75–02–04.1–08.2. "Whether the district court properly applied [the equal physical custody provisions of] N.D. Admin. Code § 75–02–04.1–08.2 is a question of law." *Serr v. Serr*, 2008 ND 229, ¶ 11, 758 N.W.2d 739. In assessing whether parents have been awarded equal physical custody for purposes of offsetting their child support obligations, the actual language of the judgment, rather than the parents' actual custodial arrangement, controls whether a parent has "equal physical custody" of the child "exactly fifty percent of the time." *Serr*, at ¶ 12. Here, the parents do not dispute that the district court awarded Chad Crandall primary res-

idential responsibility of the children and that the court did not award each parent equal physical custody.

[¶ 10] This Court's decisions recognize that the child support guidelines contemplate child support payments by the parent without primary residential responsibility to the parent with primary residential responsibility. *See Richter,* 1999 ND 147, ¶ 22, 598 N.W.2d 193; *Dalin v. Dalin,* 545 N.W.2d 785, 789–90 (N.D.1996); *Brakke v. Brakke,* 525 N.W.2d 687, 690 (N.D.1994). In *Brakke,* at 690, this Court said a district court must consider a child support award in the context of the parents' agreement or acquiescence that the former noncustodial parent would become the custodial parent. In that context, we said the "underlying basis for [the former noncustodial parent's] child support obligation . . . was eliminated," and "[i]t would be unjust to enforce [his] support obligation under a judgment which contemplated that [the former custodial parent], not [the former noncustodial parent], would be the custodial parent." *Id.* In *Dalin,* 545 N.W.2d at 789–90, this Court cited *Brakke* and N.D. Admin. Code § 75–02–04.1–02(1) for the proposition that "the child support guidelines 'contemplate child support payments be made by the noncustodial parent to the custodial parent.'" We directed a district court to reconsider an order requiring a custodial parent to pay child support to a noncustodial parent while the child was in the noncustodial parent's custody. *Dalin,* at 790. *See* N.D. Admin. Code § 75–02–04.1–08.1 (authorizing adjustments for extended visitation in regulation promulgated effective August 1, 1999).

[¶ 11] A common thread in our caselaw and the child support guidelines is that a parent who is not awarded primary residential responsibility must pay child support to the parent awarded primary residential responsibility of the child. We construe the regulatory scheme of the child support guidelines in conjunction with our caselaw to require a parent who does not have primary residential responsibility of a child to pay child support to the parent with primary residential responsibility.

[¶ 12] Here, the district court awarded Chad Crandall primary residential responsibility of the children, and Heidi Crandall has not appealed that decision. *See Hopfauf v. Hieb,* 2006 ND 72, ¶ 11 n. 2, 712 N.W.2d 333 ("'law of the case' doctrine and the scope of parties' appeal define the parameters of [this Court's] review"). The district court's findings for child support in this case state the court considered the amount of time the children spent with each parent and the child support guidelines. However, the "'mere recitation that the guidelines have been considered . . . is insufficient to show compliance with the guidelines.'" *Buchholz,* 1999 ND 36, ¶ 12, 590 N.W.2d 215 (quoting *Heley v. Heley,* 506 N.W.2d 715, 721 (N.D.1993)).

[¶ 13] We reject Heidi Crandall's argument that the district court's decision is an authorized deviation from the guidelines under N.D. Admin. Code § 75–02–04.1–09(2)(j) because of the "reduced ability of the obligor to pay child support due to a situation, over which the obligor has little or no control, which requires the obligor to incur a continued or fixed expense for other than subsistence needs, work expenses, or daily living expenses." Heidi Crandall claims the parties "have little to no control over their respective incomes and the time spent by each party with their children" and the court did not err in awarding her child support.

[¶ 14] However, any deviation from the guidelines requires the court to make specific findings on the record. *Schumacher v. Schumacher,* 1999 ND 10, ¶ 10, 589 N.W.2d 185. Moreover, Heidi

Crandall's argument ignores the regulatory scheme for determining child support, including the provisions for calculating income and allocating child support based upon primary residential responsibility. The court's findings do not identify either parties' income, and income is necessary to establish a child support obligation. *Buchholz*, 1999 ND 36, ¶ 12, 590 N.W.2d 215; N.D. Admin. Code § 75–02–04.1–02(10). Here, there are no findings about net income, or findings for a deviation under any guideline provisions.

[¶ 15] The district court's award of primary residential responsibility to Chad Crandall does not constitute equal physical custody, and the plain language of the child support guidelines does not authorize the court to order a custodial parent to pay child support to the noncustodial parent. We conclude the court's child support award does not follow the law, and we reverse the award and remand for calculation of child support under the guidelines with appropriate recoupment of child support erroneously paid by Chad Crandall since December 10, 2010. Because a different district court judge will decide the child support issues on remand, the new judge must comply with N.D.R.Civ.P. 63.

### III

[¶ 16] In her cross-appeal, Heidi Crandall argues the district court's distribution of the marital estate was not equitable and is clearly erroneous. She argues there was a substantial disparity in the asset and debt distribution without an adequate explanation by the court. She claims Chad Crandall's 401(k) was not considered a marital asset available for distribution and her non-existent life insurance policy was included as an asset and given to her. She asserts those items resulted in an $82,777 windfall for Chad Crandall. Chad Crandall counters that the court's

distribution of marital property was appropriate under the circumstances of this case. He argues the court's findings of fact may be used to explain its memorandum opinion, and when the court affixes its signature to the findings, those findings become the court's findings. He asserts the court's findings reflect financial mismanagement and dissipation of the marital estate by Heidi Crandall and support the court's distribution of the parties' marital estate.

[¶ 17] Under N.D.C.C. § 14–05–24(1), a district court must make an equitable division of the parties' marital estate in a divorce action. In making an equitable distribution of marital property, a court must consider all of the parties' assets. *Donlin v. Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905. After including all of the parties' marital assets in the marital estate, the court must consider the following factors emanating from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in its distribution of the parties' assets:

" '. . . the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.' "

*Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724 (quoting *Weigel v. Weigel*, 2000 ND 16, ¶ 6, 604 N.W.2d 462).

[¶ 18] A property division need not be equal to be equitable, but a substan-

tial disparity must be explained. *Wagner v. Wagner*, 2007 ND 101, ¶ 10, 733 N.W.2d 593. Generally, " 'long-term marriage[s] support[ ] an equal distribution of [marital] property.' " *Holden v. Holden*, 2007 ND 29, ¶ 10, 728 N.W.2d 312 (quoting *Donlin*, 2007 ND 5, ¶ 11, 725 N.W.2d 905). However, financial misconduct and dissipation of assets are grounds for an unequal property distribution. *Schwartz v. Schwartz*, 1997 ND 91, ¶¶ 6–7, 563 N.W.2d 391; *Behm v. Behm*, 427 N.W.2d 332, 337 (N.D. 1988).

 [¶ 19] A district court's property distribution is treated as a finding of fact, and " 'we will not reverse [the distribution] unless the district court's findings are clearly erroneous.' " *Ulsaker v. White*, 2009 ND 18, ¶ 8, 760 N.W.2d 82 (quoting *Wold v. Wold*, 2008 ND 14, ¶ 6, 744 N.W.2d 541). " 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made.' " *Lorenz v. Lorenz*, 2007 ND 49, ¶ 5, 729 N.W.2d 692 (quoting *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 8, 714 N.W.2d 845). " 'A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the trial court.' " *Edward H. Schwartz Constr., Inc. v. Driessen*, 2006 ND 15, ¶ 6, 709 N.W.2d 733 (quoting *Brandt v. Somerville*, 2005 ND 35, ¶ 12, 692 N.W.2d 144). " 'On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses.' " *Driessen*, at ¶ 6 (quoting *Brandt*, at ¶ 12).

[¶ 20] The district court's findings in its memorandum opinion are conclusory, but the court's statements in its findings of fact provide some explanation for the distribution of property and debt and may be used to explain the court's decision. *See Davis v. Davis*, 458 N.W.2d 309, 313–14 (N.D.1990) ("when there is an inconsistency or discrepancy between a memorandum opinion and the findings of fact, the later prevail" and "[w]hen the trial judge affixes his signature to the findings of fact they become the findings of the court irrespective of whether or not they have been prepared by counsel").

[¶ 21] The court's findings include statements about financial mismanagement and dissipation of assets by Heidi Crandall and provide an explanation of the basis for the court's decision:

"[Heidi Crandall] failed to timely pay her debts during the pendency of this matter, resulting in a continued accumulation of unnecessary debts, including late charges and additional financial charges. The Court further finds that [Heidi Crandall] expended sums on clothing and other unnecessary expenditures while failing to pay her outstanding credit card charges, and that some of the credit card and debt items awarded to [her] are also joint debts with [Chad Crandall]. [Heidi Crandall] failed to articulate any clear plan articulated on how she intended to pay the debts, including debts jointly held with [Chad Crandall]. As a result, [Chad Crandall] requested that he be awarded his entire 401k interest to provide him a source of repayment of his debts, including joint debts. In addition, [Chad Crandall] put forward evidence of the increase in his attorneys fees as a result of the conduct of [Heidi Crandall]. Therefore, the Court, while awarding both parties their own attorneys fees, does herein award to [Chad Crandall] his entire interest in

his 401k plan, and determines that the division of property and debts, outlined in the conclusions of law herein, is fair and equitable."

[¶ 22] Evidence in this record supports the district court's finding about Heidi Crandall's financial conduct and dissipation of assets, including her failure to timely pay debts during the divorce action and failure to articulate a plan for payment of joint debts. Under these circumstances, the court was entitled to award Chad Crandall his 401(k) interest ostensibly to pay the parties' joint debts.

[¶ 23] Evidence in this record also supports the court's finding about the relative value of Heidi Crandall's insurance policy. Chad Crandall introduced evidence that his Prudential Life insurance policy had a cash value of $16,590.40, and he testified that Heidi Crandall also had a life insurance policy, but that she had not provided any information about the policy during discovery. In a pretrial property listing under N.D.R.Ct. 8.3, Chad Crandall listed Prudential Life insurance polices belonging to both parties, each with a value of $16,590.40. Chad Crandall also introduced into evidence a joint tax return of the parties, which listed ordinary dividends from Prudential for two separate items. Heidi Crandall testified on cross-examination that she did not recall having a Prudential Life insurance policy and that she had made no "effort to locate that policy and its value." Based on that evidence, the court was entitled to draw an inference that Heidi Crandall had a Prudential Life insurance policy with a relative value of $16,590.40.

[¶ 24] We are not left with a definite and firm conviction the district court made a mistake in finding the value of the parties' marital estate and distributing the parties' marital assets. The court's choice between two permissible views of the evi-

dence is not clearly erroneous, and we decline Heidi Crandall's invitation to reweigh the evidence or the credibility of witnesses. We therefore conclude the court's property distribution is not clearly erroneous.

IV

[¶ 25] We affirm the district court's judgment distributing marital property. We reverse the court's child support award and remand for proceedings consistent with this opinion.

[¶ 26] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 27] I concur in that part of the majority's opinion reversing the award of child support and remanding for recalculation under the guidelines. I respectfully dissent from Part III of the majority's opinion, which affirms the property division in the judgment. I would reverse the property division portion of the judgment and remand for the trial court to properly explain the substantial disparity in the division of the parties' marital estate.

[¶ 28] The parties have been married fifteen years. Our Court has recognized that a long-term marriage supports an equal distribution of property. *Ulsaker v. White*, 2009 ND 18, ¶ 12, 760 N.W.2d 82; *see Wold v. Wold*, 2008 ND 14, ¶ 17, 744 N.W.2d 541 (stating a fifteen-year marriage is a long-term marriage); *Wagner v. Wagner*, 2007 ND 101, ¶ 16, 733 N.W.2d 593 (stating a twelve-year marriage is a long-term marriage). Our Court has also stated that a substantial disparity in the division of the marital estate must be explained with adequate findings following

the *Ruff–Fischer* guidelines. *Ulsaker v. White*, 2006 ND 133, ¶ 17, 717 N.W.2d 567.

[¶ 29] To the extent the trial court made any findings in this case, they are insufficient to explain the trial court's rationale for the substantial disparity in the property division. The trial court's rationale for the unequal property division in its memorandum opinion is completely nonexistent. The trial court's subsequent findings of fact provide little explanation for the distribution of the marital estate. The trial court awarded Chad Von Crandall his entire interest in his 401K plan, which was valued at $66,187.19. The trial court appears to have found that Heidi Jo Crandall accumulated unnecessary debt, some of which was joint debt with Chad Von Crandall; that Heidi Jo Crandall had no plan of how she would pay the debt jointly held with Chad Von Crandall; and that Chad Von Crandall requested he be awarded his entire 401K interest to provide him a source of repayment of debt, including the joint debt. The record indicates, however, that the only joint debt of the parties assigned to Chad Von Crandall was $8,439.00, which was one-half of the debt to Wells Fargo and one-half of the debt for the pole barn. The other debt assigned to Chad Von Crandall included the Lincoln State Bank loan in the amount of $15,874.51, the U.S. Bank credit card debt in the amount of $11,513.02, and the Bremer Bank loan in the amount of $4,013.83, which were all incurred by Chad Von Crandall after the parties separated, as was the majority of his Scheels credit card debt. The record also indicates that Heidi Jo Crandall was assigned all of the debt she incurred in her name, Chad Von Crandall's Citi credit card debt of $936.86, and the remainder of the joint debt of the parties. There is no evidence Chad Von Crandall was assigned debt incurred jointly by the parties during their marriage, with the exception of the joint debt, which

was one-half of the debt to Wells Fargo and one-half of the debt for the pole barn. The trial court's finding that Chad Von Crandall needed the entire $66,187.19 in the 401K plan to cover the joint debt of $8,439.00 he was assigned to pay is not supported by the record.

[¶ 30] The trial court makes a vague finding that Heidi Jo Crandall's conduct increased Chad Von Crandall's attorney's fees, but the finding does not state what conduct the court is referring to or the amount of attorney's fees incurred as a result of the conduct.

[¶ 31] We have said that the trial court's findings must provide us with "a clear understanding of the basis of the trial court's decision." *Linrud v. Linrud*, 552 N.W.2d 342, 346 (N.D.1996). I am of the opinion that the trial court's findings are not adequate to explain the entire award of the $66,187.19 in the 401K plan to Chad Von Crandall.

[¶ 32] Mary Muehlen Maring