2014 ND 90

**Alonna Knorr NORBERG, Plaintiff and Appellant**

v.

**Jon David NORBERG, Defendant and Appellee.**

No. 20130149.

Supreme Court of North Dakota.

April 29, 2014.

350

Richard Ducote (argued), Pittsburgh, PA, Brian C. Balstad (appeared) and Patti Jo Jensen (on brief), East Grand Forks, MN, for plaintiff and appellant.

Susan Lorraine Ellison, West Fargo, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Alonna Norberg appeals from a district court judgment granting her a divorce from Jon Norberg, distributing the parties' marital estate, awarding Jon Norberg primary residential responsibility of the parties' three minor children, and denying her request for spousal support. We conclude the court's decision to award Jon Norberg primary residential responsibility of the children is not clearly erroneous. However, we also conclude the court erred by failing to include all of the parties' property in the property distribution, failing to retain jurisdiction to award spousal support in the future, and forgiving Jon Norberg's child support arrearages. We affirm in part, reverse in part, and remand.

I

[¶ 2] Alonna and Jon Norberg were married in 1996, and have three children together. The Norbergs both have medical degrees and have been employed as physicians in the past. Alonna Norberg stopped working in 2008, due to medical problems and receives social security disability benefits.

[¶ 3] In 2011, Alonna Norberg filed for divorce. She requested a fair and equitable property distribution, primary residential responsibility of the children, child support, and permanent spousal support. She also moved for a temporary order, granting her use of the parties' residence, temporary primary residential responsibility of the children, and child support. Alonna Norberg filed an affidavit in support of her motion for a temporary order, alleging Jon Norberg forced her to engage in sexual acts without her consent while she was drugged, he administered the drug

propofol to her without her knowledge, he videotaped them engaging in sexual acts without her knowledge, and he was verbally abusive. Jon Norberg responded to the motion and denied Alonna Norberg's allegations, claiming she fabricated the allegations to help secure primary residential responsibility of the children.

[¶ 4] On August 17, 2011, the district court entered a temporary order, granting Alonna Norberg exclusive use of the parties' residence and giving her temporary primary residential responsibility of the children. The court ordered Jon Norberg pay $4,250 per month in child support beginning August 2011. The temporary order was amended three times, but Alonna Norberg retained primary residential responsibility of the children, and none of the amended orders modified Jon Norberg's child support obligation.

[¶ 5] On August 24, 2011, the district court ordered a custody investigator be appointed. The custody investigator ultimately recommended Alonna Norberg be awarded primary residential responsibility of the children and Jon Norberg be granted parenting time.

[¶ 6] There was a criminal investigation of Alonna Norberg's allegations, and Jon Norberg was charged with various felony offenses. After a jury trial in November 2012, Jon Norberg was acquitted of the charges.

[¶ 7] In January 2013, a trial was held in the divorce proceeding, and in March 2013, the district court entered an order granting Alonna Norberg a divorce from Jon Norberg. The court awarded Jon Norberg primary residential responsibility of the children, finding Alonna Norberg's allegations about Jon Norberg drugging her and forcing her to engage in sexual acts were not credible and were false. The court distributed the parties' marital estate, awarding Alonna Norberg $348,786.50 in assets and $712,641.00 in debts, and awarding Jon Norberg $1,112,892.50 in assets and $1,301,040.00 in debts. The court denied Alonna Norberg's request for permanent spousal support. The court awarded Jon Norberg child support and ordered that his child support obligation was terminated as of December 1, 2012, and any arrearages he owed from the period when Alonna Norberg had temporary primary residential responsibility were forgiven. A judgment was subsequently entered.

## II

[¶ 8] Alonna Norberg argues the district court erred in awarding Jon Norberg primary residential responsibility of the parties' children. She contends the court's decision was primarily based on its erroneous finding that she falsely accused Jon Norberg of drugging her with propofol without her consent and sexually assaulting her. She contends the court equated Jon Norberg's criminal acquittal with a finding of innocence. She claims the court's decision should be reversed because a mistake has been made, the court based its decision on its finding that she fabricated the propofol and sexual abuse allegations, the court did not consider the other best interest factors, and this Court should not defer to the district court's findings about witness credibility.

[¶ 9] "A court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous." *Rustad v. Rustad,* 2013 ND 185, ¶ 5, 838 N.W.2d 421. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or we are convinced, based on the entire record, that a mistake has been made. *Id.* We do not reweigh the evi-

dence, reassess the witnesses' credibility, or substitute our judgment for a district court's initial primary residential responsibility decision. *Dieterle v. Dieterle*, 2013 ND 71, ¶ 6, 830 N.W.2d 571. The district court is in a better position to judge the witnesses' credibility and we will not reassess the witnesses' credibility. *Id.* at ¶ 11.

[¶ 10] The district court must award primary residential responsibility to the parent who will best promote the child's best interests. *Rustad*, 2013 ND 185, ¶ 6, 838 N.W.2d 421. The court has broad discretion in deciding residential responsibility; however, the court must consider the best interest factors under N.D.C.C. § 14–09–06.2(1). *Rustad*, at ¶ 6. "The court is not required to make specific findings on each best interest factor, but the court must consider all of the factors and make findings with sufficient specificity to enable our Court to understand the factual basis for its decision." *Id.*

[¶ 11] The district court considered and made specific findings on each of the relevant best interest factors under N.D.C.C. § 14–09–06.2(1). The court found factors (a), (b), (c), (d), (h), (i), (j), and (k) did not favor either party. The court found both parents love the children, both parents can adequately assure the children will receive adequate food and shelter, both parents are excellent parents with some imperfections, both parents have extended family that have a positive impact on the children, and both parents show an interest in the children's education.

[¶ 12] The court considered factor (g), the parents' health and its impacts on the children, and found that factor favored Jon Norberg because he does not have any adverse health issues but Alonna Norberg's physical and emotional health has had a great impact on the children:

At any one time, Alonna was on 40 different medications. She was bedridden at times. She, at times, used crutches and walkers to ambulate. She had difficulty concentrating and remembering. In 2009 Alonna was admitted to Sierra Tucson, a treatment facility in Arizona for treatment of chronic pain, chemical dependence, and mood disorder. Alonna relapsed after that treatment.

Alonna suggests that she has made a remarkable recovery since June, 2011. She attributes this to the fact that Jon has been out of the home during this period and therefore, Jon must have been the source of her problems. The Court, however, refuses to make that connection. A more plausible explanation for Alonna's miraculous recovery is that she now takes seven medications as opposed to the 40 she was taking before. Alonna was very motivated to clean up her act. Very telling was the parent investigator's testimony that Alonna's family, i.e., mother, father, brothers, and sisters, told him that if a decision had to be made in June of 2011 who should have custody of the children, they would have supported Jon.

The Court also finds Dr. Harjinder Virdee's testimony persuasive when she testified that use of opiates, Alonna's problem, has a high rate of recurrence, and that stressors are the common cause of recurrence.

[¶ 13] The court found other factors favored Jon Norberg based on its findings about Alonna Norberg's allegations that Jon Norberg abused her and sexually assaulted her. In considering factor (j) and whether there was evidence of domestic violence, the court found there was no credible evidence of domestic violence and explained its findings about Alonna Norberg's allegations:

Alonna also alleged that Jon administered Propofol to her which resulted in nonconsensual oral sex and anal sex. First of all, this Court finds that Alonna was a willing participant in the use of Propofol on her. She ordered, by mail, some of the equipment which would allow Propofol to be administered through her port. Her testimony that she did not know Diprivan was Propofol is not credible given her training as a physician. Alonna was in a very bad state physically and emotionally and was willing to try anything, including Propofol, to feel better. Alonna also agreed that she had been a willing participant in oral and anal sex in the past.

Alonna's assertion that Jon had forced oral and anal sex on her also lacks credibility for several other reasons. She knew that given her physical and mental condition, she would likely lose the kids to Jon in a divorce. She met with a divorce lawyer before she reported the incident to the police on July 5, 2011. Her report to the police was very explicit and she volunteered the information without much prompting from the questioner. This is uncharacteristic of sexual abuse victims who often find it difficult to talk about the matter. The following evening after June 17, 2011, Alonna camped with Jon and the children in one of their vacant lots, to celebrate Father's Day. The following day, they all had a church picture taken together. Finally, Alonna did not mention sexual abuse or domestic abuse to any of her physicians before July 5, 2011.

The Court finds that Alonna's report of sexual abuse was untrue and was nothing more than her attempt to get primary residential responsibility of the parties' children.

The court found Alonna Norberg's false allegations also affected other best interest factors. The court found Alonna Norberg lied to the children about her allegations against Jon Norberg, her lies alienated the children from their father, and her lies resulted in Jon Norberg having supervised parenting time with the children, which may have damaged his relationship with them. The court found Alonna Norberg's lies about Jon Norberg were strong evidence of her moral unfitness impacting the children because the children had to deal with news accounts of the criminal trial and the intrusions of supervised parenting time and the lies put Jon Norberg at risk of going to prison. After considering the best interest factors and making specific findings about each factor, the court awarded Jon Norberg primary residential responsibility.

[¶ 14] Alonna Norberg contends the court misapplied the law and improperly relied on Jon Norberg's acquittal from the criminal charges, viewing the acquittal as the equivalent of factual vindication. However, the court did not rely on Jon Norberg's acquittal in the criminal proceedings to determine Alonna Norberg's allegations were false. The court's findings clearly indicate it considered the evidence presented at the divorce trial and determined her allegations were not credible. The court explained why it did not find her allegations credible. The court did not misapply the law and improperly rely on Jon Norberg's acquittal in the criminal proceedings.

[¶ 15] Alonna Norberg also argues the court's decision is based on its mistaken finding that she fabricated the propofol and sexual assault claims. She contends the court's findings about her credibility are based on illogical reasoning. She claims she did not know that Diprivan was propofol, her actions were consistent with

the truth of her allegations, the court ignored Jon Norberg's behavior that was consistent with her allegations, and the court ignored the inconsistencies in his testimony.

[¶ 16] Alonna Norberg is asking this Court to reassess the witnesses' credibility, reweigh the evidence, and make new findings of fact; however, that is beyond our scope of review. *See Hammeren v. Hammeren*, 2012 ND 225, ¶ 25, 823 N.W.2d 482. "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result." *Id.* at ¶ 8. A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable in close cases. *Id.* There is evidence supporting the court's findings and we will not reassess the witnesses' credibility or reweigh the evidence. We conclude the court's decision to award Jon Norberg primary residential responsibility of the children is not clearly erroneous.

### III

[¶ 17] Alonna Norberg argues the district court erred in distributing the parties' property.

[¶ 18] A court's distribution of marital property is a finding of fact, which will not be reversed on appeal, unless it is clearly erroneous. *Hoverson v. Hoverson*, 2013 ND 48, ¶ 8, 828 N.W.2d 510. The court's findings are presumptively correct and we view the evidence in the light most favorable to the findings. *Id.*

[¶ 19] The court must make an equitable distribution of the parties' assets and debts. *Walstad v. Walstad*, 2013 ND 176, ¶ 13, 837 N.W.2d 911. All property held by either party, regardless of its source, is considered marital property and must be included in the marital estate. *Hoverson*, 2013 ND 48, ¶ 9, 828 N.W.2d 510. The court must include all of the parties' assets and debts in the marital estate and determine the total value of the estate to make an equitable distribution. *Holte v. Holte*, 2013 ND 174, ¶ 25, 837 N.W.2d 894; *Hoverson*, at ¶ 9. Marital property is generally valued as of the date of the divorce trial. *Hoverson*, at ¶ 9. After the court includes all of the property in the marital estate and determines the value of the property, the court must equitably divide the entire estate applying the following factors from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966):

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Holte*, at ¶¶ 8, 25. A property division is not required to be equal to be equitable, but a substantial disparity must be explained. *Hoverson*, at ¶ 10. If substantial assets or debts are excluded from the marital estate, we are unable to determine whether the district court would have reached the same result in distributing the parties' property had it correctly included all of the assets and debts in the estate before distribution. *Holte*, at ¶ 25.

### A

[¶ 20] Alonna Norberg argues the court did not include all of the parties' assets and debts in the distribution.

[¶ 21] The court found the parties' home in Fargo was worth $400,000 and the parties had a $434,484 mortgage on the home. The court included these amounts in its valuation of the marital estate. In distributing the marital estate, the court awarded Jon Norberg the house and included the value of the home in the assets awarded to Jon Norberg. The court did not include the mortgage in either party's debt allocation, and therefore did not include it in the calculations for the parties' total property awards.

[¶ 22] Jon Norberg argues the exclusion of the mortgage from the court's distribution of the parties' assets and debts was a clerical error and the debt was allocated to him. Jon Norberg contends the court said, "Although the marital home is in foreclosure, in his closing brief, Jon expressed an interest in keeping the marital home. Therefore, it is appropriate to use the value of the marital home as an asset, and the mortgages as a debt." However, the court's statement about including the value of the marital home as an asset and its mortgage as a debt was made after the court listed all of the items in the marital estate and only explains why the court felt they should be included in the marital estate. The court did not allocate the mortgage to Jon Norberg. The court erred by failing to distribute the mortgage on the Fargo home.

[¶ 23] The court also included two mortgages in the martial estate for property in McLean County, which the Norbergs purchased from Alonna Norberg's parents, Robert and Cheri Knorr. According to the Knorrs, they want to purchase the property back from the Norbergs and litigation in the matter is ongoing. The court found the debt from the two mortgages on the property was in the amount of $425,665 and $116,106. The court allocated that debt to Jon Norberg. The court

further ordered, "In *Knorr v. Norberg*, file number 28–2012–CV–00018, the trial court entered a memorandum opinion allowing Robert and Cheri to purchase back the home from Alonna and Jon. Rather than reserving jurisdiction on this issue, to the extent Robert and Cheri's payments exceed the Choice Financial indebtedness, the Court is awarding those sums to Jon." The district court's decision in *Knorr v. Norberg* allowing the Knorrs to buy back the property was appealed, and this Court reversed the district court's decision and remanded for the court to consider the Knorrs' other arguments about equitable remedies. *See Knorr v. Norberg*, 2014 ND 74, 844 N.W.2d 919. Jon and Alonna Norberg owned this property at the time of the divorce trial and they continue to own this property. The court erred in treating the property as if it had been sold. The court awarded Jon Norberg any amount from the sale of the property that exceeds the amount of the mortgages; and therefore the court's decision indicates it awarded the McLean County property to Jon Norberg. The district court failed to include the value of the property in the marital estate or in the assets allocated to Jon Norberg.

[¶ 24] Jon Norberg argues the court could not include the value of the property in the marital estate because the parties did not present any evidence about the value of the property. However, there was evidence presented that the lease the Knorrs claimed applied and were suing the Norbergs to enforce included a purchase option stating the purchase price shall be the sum of the principal amounts that are remaining on the two mortgages at the time of purchase. The Knorrs' complaint in the litigation requested the court "order the [Norbergs] to comply with the terms of the agreement, granting the [Knorrs] the right to purchase the McLean County property for the balance of the indebted-

ness remaining on the two (2) Choice Financial mortgages[.]" This is evidence of an offer to purchase the property for the amount of the mortgages and is evidence of the current value of the property. The value of the property must be included in the marital estate and the property must be included in the property distribution.

[¶ 25] The value of the mortgage on the Fargo home and the value of the McLean County property are significant. The district court erred in failing to include these amounts in the marital estate and property distribution. Because the values of these assets and debts are significant, we are unable to determine whether the district court would have reached the same result if these amounts were included, and therefore we are unable to properly review the district court's decision and determine whether the distribution was equitable. We reverse the district court's property distribution and remand for the court to equitably distribute the parties' property after including all of the parties' assets and debts in the marital estate.

B

[¶ 26] Alonna Norberg also contends the court erred by failing to include assets in the marital estate that Jon Norberg dissipated to pay his child support obligation while she had temporary residential responsibility of the children.

[¶ 27] The court found Jon Norberg sold some of the parties' assets while the divorce proceedings were pending. The court found Jon Norberg was granted leave to sell the assets or use the available funds and he presented evidence about the use of those funds. The court explained why it did not include the value of these assets in the marital estate or assign the value of the assets to Jon Norberg in the property distribution:

Many of the expenditures from the money spent by Jon went to marital expenses, or paying marital debt. For those expenses, it would be unfair to put those funds used for that purpose on Jon's side of the ledger for property distribution.

Many of the expenses were for Jon's defense in the criminal charges levied against him. As explained in this opinion, it was Alonna's lies about the unknowing administration of Propofol to her and being sexually assaulted that instigated the charges. It would be unfair to place those expenses on Jon's side of the ledger in the property distribution.

Also, a large sum of money was used to pay the supervisors for Jon's supervised parenting time. Jon's supervised parenting time resulted from the untruthful allegations Alonna had made about domestic violence. It would be unfair to place those expenses on Jon's side of the ledger in the property distribution.

The remaining money spent by Jon was used to pay for various expenses relating to the divorce and other personal expenses. Again, Alonna's lies about Jon's actions had devastating effects on Jon's financial status. The resulting criminal charges not only required Jon to expend large sums of money to defend himself, but it deprived him of income opportunities. A party's dissipation of marital assets is an important relevant factor in an equitable distribution of property. Alonna's lies dissipated marital assets. It would be inequitable to put on Jon's side of the ledger in the property division any of the marital assets he spent during the pendency of the divorce.

(Citations omitted).

[¶ 28] Alonna Norberg cites *Lohstreter v. Lohstreter*, 1998 ND 7, 574 N.W.2d 790,

in support of her argument that the court erred in failing to include the dissipated assets in the marital estate. In *Lohstreter*, at ¶¶ 18–21, the husband accumulated debt for his own personal benefit and to pay court-ordered support to his wife and the district court divided part of this debt and allocated some to the wife. We reversed the district court's property distribution and held the debt accumulated by the husband for his own benefit and to pay court-ordered support should not be shifted to the wife because it has the effect of requiring the supported spouse to reimburse her husband for part of his support payments to her. *Id.* This case is different. Alonna Norberg is not required to pay off debt Jon Norberg incurred to pay her support or to pay child support; rather, there were fewer assets to distribute between the parties because Jon Norberg sold some assets to pay his child support obligation and to pay off marital debt.

[¶ 29] Jon Norberg sold the assets, which included his medical practice, while his license to practice medicine was suspended. His medical license was suspended as a result of Alonna Norberg's allegations about the administration of propofol. Alonna Norberg's allegations caused Jon Norberg's income to be greatly diminished and required him to expend large sums of money to defend himself. The assets were dissipated as a result of Alonna Norberg's actions. The court adequately explained why the assets were not included in the property distribution and were not included in the assets awarded to Jon Norberg. Alonna Norberg is not required to pay any debt that was incurred to support her or the children while she had primary residential responsibility. The court did not err in failing to include these assets in the property distribution.

## IV

[¶ 30] Alonna Norberg argues the district court erred in failing to award her spousal support or failing to reserve jurisdiction to award spousal support at a later time. She contends the court did not make findings about relevant *Ruff–Fischer* factors.

[¶ 31] A spousal support award is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Holte*, 2013 ND 174, ¶ 9, 837 N.W.2d 894. A court may award spousal support after considering the parties' circumstances and applying the *Ruff–Fischer* factors. *Id.* at ¶ 8. The court is not required to make specific findings on each factor if we can determine the reasons for the court's decision. *Id.* at ¶ 9. Property distribution and spousal support are interrelated and often must be considered together. *Id.* at ¶ 10.

[¶ 32] Here, the district court considered the *Ruff–Fischer* factors and denied Alonna Norberg's request for support. The court considered the *Ruff–Fischer* factors and found:

Looking at the ages of the parties, both are 42 years old. Looking at their earning ability, Alonna earns $5,295.00 per month in disability benefits. Jon is currently earning approximately $7,500.00 per month. The duration of the marriage was 16 years. The conduct of the parties during the marriage, in the Court's view, is the biggest factor in this case. Jon's substantial income from his medical practice ended in late July of 2011 as a result of Alonna's false allegations of unconsenting Propofol use and unconsented sexual abuse. Furthermore, criminal charges followed, which required Jon to expend hundreds of thousands of dollars in his criminal defense fighting those charges that led to an acquittal.

The court found that awarding Alonna Norberg spousal support based on Jon Norberg's prior income would reward her for her misconduct. The court also found both parties plan to have their medical licenses reinstated and Alonna Norberg is not in need of additional support given the parties' current situation was caused by her misconduct.

[¶ 33] The court properly applied the law, considering the *Ruff–Fischer* factors, Alonna Norberg's need, and Jon Norberg's ability to pay. The evidence supports the court's findings. The court's findings about Alonna Norberg's current request for spousal support are not clearly erroneous.

[¶ 34] The court also considered Alonna Norberg's request for the court to retain jurisdiction to consider awarding spousal support in the future. The court denied her request, finding "it shall be divested of any jurisdiction whatsoever to award temporary or permanent spousal support to either of the parties."

[¶ 35] Where there is a demonstrated limitation on the ability to be self-supporting such as disability, a district court should retain jurisdiction to potentially award spousal support in the future when there is uncertainty about the parties' future incomes and need for support. *See Reineke v. Reineke*, 2003 ND 167, ¶ 23, 670 N.W.2d 841; *Branson v. Branson*, 411 N.W.2d 395, 398–99 (N.D.1987). In *Reineke*, this Court reversed the district court's decision not to retain jurisdiction to modify the support obligation and award permanent spousal support in the future if the circumstances warrant a modification when one spouse was disabled, had a lower income than the other spouse, and had a slim chance of substantially increasing her income. *Reineke*, at ¶ 23.

[¶ 36] Here, the district court found Alonna Norberg's income was more than $2,000 per month less than Jon Norberg's income and both parties plan to get their medical licenses reinstated. In deciding other issues in the case, the court also found Alonna Norberg is disabled, it was unlikely that she would get her medical license reinstated, and Jon Norberg has better opportunities for gainful employment and had secured employment. Jon Norberg has a greater earning ability than Alonna Norberg, and his financial situation may greatly improve in the future.

[¶ 37] Considering Alonna Norberg's potential need for support in the future and the possibility that Jon Norberg may have a greater ability to pay support in the future, we are left with a definite and firm conviction the court made a mistake in not retaining jurisdiction to award spousal support in the future. We conclude the court's decision denying Alonna Norberg's request for spousal support without retaining jurisdiction to award support in the future is clearly erroneous. We remand and direct the district court to modify the judgment to retain jurisdiction to potentially award Alonna Norberg spousal support in the future if circumstances change and an award is warranted.

## V

[¶ 38] Alonna Norberg argues the district court erred in failing to provide child support to her for the months she had temporary primary residential responsibility of the children and for waiving Jon Norberg's child support arrearages.

[¶ 39] In its March 2013, order and the subsequent judgment, the court ordered Jon Norberg's child support obligation was terminated as of December 1, 2012, and "any arrearages owed by Jon to Alonna pursuant to this Court's Interim Order

shall be forgiven." The court set Alonna Norberg's child support obligation and ordered her obligation would start on March 1, 2013.

[¶ 40] Section 14-08.1-05(1), N.D.C.C., provides, "Any order directing any payment or installment of money for the support of a child is, on and after the date it is due and unpaid . . . [a] judgment by operation of law . . . and [n]ot subject to retroactive modification." A due and unpaid child support obligation becomes a judgment as a matter of law. *See Darling v. Gosselin,* 1999 ND 8, ¶ 7, 589 N.W.2d 192. A vested child support obligation cannot be retroactively modified. *Marchus v. Marchus,* 2006 ND 81, ¶ 8, 712 N.W.2d 636. "[O]ur cases permit a 'modification [for] any period during which there is pending a petition for modification . . . from the date that notice of such petition has been given. . . .' A 'pending modification' is not a 'retroactive' modification." *Mahoney v. Mahoney,* 538 N.W.2d 189, 196 (N.D.1995) (quoting 42 U.S.C. § 666(a)(9) (1988)). A district court has discretion to decide the appropriate effective date of an order modifying a child support obligation and whether the effective date should be the date the motion was filed or some later effective date. *See Wagner v. Wagner,* 2007 ND 101, ¶ 28, 733 N.W.2d 593; *Mahoney,* at 196.

[¶ 41] The court's decision awarding Jon primary residential responsibility was not entered until March 2013. On August 17, 2011, the district court entered the temporary order granting Alonna Norberg primary residential responsibility of the parties' children and ordering Jon Norberg pay $4,250 per month in child support beginning on August 1, 2011. The order also stated Jon Norberg's child support obligation "shall continue until the child attains the age of eighteen (18) years. . . ." The temporary order was amended a number of times, but Jon Norberg's child support obligation was never modified and the child support order was included in each temporary order. The temporary order requiring Jon Norberg pay $4,250 per month in child support was in effect until the court's March 2013 decision. Alonna Norberg had primary residential responsibility of the children until the March 2013 decision. Parents have a duty to support their children to the best of their abilities. N.D.C.C. § 14-09-08; N.D. Admin. Code § 75-02-04.1-04; *see also Crandall v. Crandall,* 2011 ND 136, ¶ 5, 799 N.W.2d 388. The child support guidelines contemplate the primary caregiving parent is owed a duty of support on behalf of a child. *See* N.D. Admin. Code §§ 75-02-04.1-01 and 75-02-04.1-02; *Crandall,* at ¶ 7; *Krizan v. Krizan,* 1998 ND 186, ¶ 12, 585 N.W.2d 576. The court's March 2013 decision retroactively reduced Jon Norberg's child support obligation to zero for the period between December 1, 2012 and March 1, 2013. Jon Norberg did not have a pending motion to modify his child support obligation, and his child support obligation was a vested obligation, which could not be retroactively modified. The court erred in retroactively modifying Jon Norberg's child support obligation.

[¶ 42] The court misapplied the law and retroactively modified a child support order when it forgave any of Jon Norberg's arrearages. The court ordered all of Jon Norberg's child support arrearages be forgiven. "When a court forgives past due child support obligations, it has modified a child support order." *Marchus,* 2006 ND 81, ¶ 8, 712 N.W.2d 636. The court erred in retroactively modifying Jon Norberg's child support obligation by forgiving any arrearages.

[¶ 43] Jon Norberg argues he should receive credit toward his child support ob-

ligation for the amount the children receive in social security disability benefits. He contends he owed $12,784.71 in child support on December 1, 2012, the children receive $1,023 per month in social security benefits, and the court's decision to forgive his arrearages gave him credit for the children's benefits.

[¶ 44]   The district court did not explain why it ordered Jon Norberg's arrearages be forgiven.   However, even if the court ordered the arrearages be forgiven because Jon Norberg should receive credit for the social security benefits the children receive, that was in error.

[¶ 45]   In *Guthmiller v. Guthmiller*, 448 N.W.2d 643 (N.D.1989), this Court first addressed social security benefits for children of a disabled obligor and the effect on the obligor's child support obligation. This Court held there is a rebuttable presumption that an obligor is entitled to credit on a child support obligation for social security benefits paid to the obligor's children or for their benefit. *Id.* at 648.   The Court explained "[t]he rationale underlying this view is that such payments are not gratuities but were earned by the wage earner during his period of employment and that they constitute in effect insurance payments substituting for lost earning power." *Id.* at 647 (quoting *Potter v. Potter*, 169 N.J.Super. 140, 404 A.2d 352, 356 (N.J.Super.Ct.App.Div.1979)).   This Court further explained the rationale, stating "since the obligor has paid in advance for these benefits over the years (albeit mandatorily), they should be recognized as the fruits of his labor." *Guthmiller*, at 647 (quoting *Children & Youth Servs. v. Chorgo*, 341 Pa.Super. 512, 491 A.2d 1374, 1377–78 (1985)).

[¶ 46]   After *Guthmiller* was decided, N.D.   Admin.   Code  §  75–02–04.1–02(11) was adopted to address an obligor's child

support obligation and payments of children's benefits, and provides:

> A payment of children's benefits made to or on behalf of a child who is not living with the obligor must be credited as a payment toward the obligor's child support obligation in the month (or other period) the payment is intended to cover, but may not be credited as a payment toward the child support obligation for any other month or period. The court may order the obligee to reimburse the obligor for any overpayment that results from the credit provided in this subsection.

In subsequent cases this Court has held this provision of the child support guidelines " 'reinforced' the holding in *Guthmiller* by *requiring* that children's benefits be credited as a payment toward the obligor's child support obligation rather than creating a rebuttable presumption that the credit will be applied." *Davis v. Davis*, 2010 ND 67, ¶ 8, 780 N.W.2d 707 (emphasis in original).

[¶ 47]   This Court has not addressed whether an obligor is entitled to a credit for social security benefits paid to the children or on their behalf when the children receive the benefits as a result of the obligee's disability.   However, it is clear from the plain language of N.D. Admin.   Code  §  75–02–04.1–02(11)  and  our case law that an obligor will only receive a credit for benefits paid to the children or on the children's behalf when the benefits are attributable to the obligor.   The child support guidelines authorize a court to order the obligee to reimburse the obligor for any overpayment that results from a credit for benefits the children receive. Furthermore, the rationale for allowing a credit does not support requiring a credit when the benefits are not attributable to the obligor.   Our case law reflects that it is the party who earned the social security

benefits that is entitled to credit against a child support obligation. *See Guthmiller,* 448 N.W.2d at 647–48.

[¶ 48] Alonna Norberg earned the benefits during her period of employment and they substitute for her earning power. *See Guthmiller,* 448 N.W.2d at 647. The benefits were obtained as a result of Alonna Norberg's disability and the benefits substitute for the reduction in her income resulting from her disability. *See id.* Jon Norberg has a duty to support his children. N.D.C.C. § 14–09–08. He did not earn the social security benefits the children receive. His duty is not relieved when the children receive benefits that are not attributable to him. *See In re Marriage of Beacham,* 19 Kan.App.2d 271, 867 P.2d 1071, 1074 (1994).

[¶ 49] Our decision is consistent with a majority of cases from other states addressing this issue. *See, e.g., State ex rel. J.W. v. R.D.R.,* 766 So.2d 854 (Ala.Civ. App.2000); *Wilson v. Stenwall,* 1992 OK CIV APP 34, 868 P.2d 1317; *Grunewaldt v. Bisson,* 494 N.W.2d 193 (S.D.1992); *c.f. Hebert v. Stephenson,* 574 So.2d 835 (Ala. Civ.App.1990) (father not entitled to credit against his child support arrearages for Social Security payments made to his children due to disability of their stepfather); *Beacham,* 867 P.2d 1071 (adoptive father could not receive credit for social security benefits the child receives that are attributable to the child's natural father); *Traylor v. Burns,* 570 A.2d 1204 (Me. 1990) (father not entitled to credit for social security benefits the child receives attributable to the child's stepfather).

[¶ 50] We conclude the district court erred in retroactively modifying Jon Norberg's child support obligation and forgiving his arrearages. We reverse this part of the judgment and remand for the court to enter a judgment consistent with this opinion.

## VI

[¶ 51] We have considered any remaining issues and hold they are either without merit or would not change the outcome of the appeal. We conclude the court's decision to award Jon Norberg primary residential responsibility of the parties' children is not clearly erroneous, the court erred in distributing the marital estate, the court erred in failing to retain jurisdiction to award spousal support in the future, and the court erred in waiving Jon Norberg's child support arrearages. We affirm the judgment in part, reverse in part, and remand.

[¶ 52] GERALD W. VANDE WALLE, C.J., and GAIL HAGERTY, D.J., concur.

DANIEL J. CROTHERS, J., concurs in the result.

[¶ 53] The Honorable GAIL HAGERTY, D.J., sitting in place of McEVERS, J., disqualified.

SANDSTROM, Justice, concurring and dissenting.

[¶ 54] I agree with the opinion except that, unlike the majority, I am not "left with a definite and firm conviction the [district] court made a mistake" relative to spousal support.

[¶ 55] Jon and Alonna Norberg both have medical degrees and have been employed as physicians in the past. Neither is currently licensed to practice medicine. The district court found that both hope to get their medical licenses reinstated, but because the parties' current situation is caused by Alonna Norberg's falsehoods, the court determined she is not in need of any additional monies under the *Ruff–Fischer* guidelines. The court then determined it would be divested of any jurisdic-

tion to award future spousal support to either of the parties.

[¶ 56] The majority concluded the district court properly applied the law in considering the *Ruff–Fischer* factors, but decided the court made a mistake in not retaining jurisdiction to award spousal support in the future. *See Majority*, at ¶¶ 33, 37. The majority reasoned that where there is a limitation, such as disability, on the ability to be self-supporting, a district court should retain jurisdiction because of the uncertainty about the parties' future incomes. *Id.* at ¶ 35. Because Alonna Norberg had a potential need for support in the future because of her disability, the majority concluded the court made a mistake in not retaining jurisdiction to award future spousal support. *Id.* at ¶ 36.

[¶ 57] In *van Oosting v. van Oosting*, this Court reversed a district court's award of temporary spousal support, directing the trial court to award permanent support, subject to future modification. 521 N.W.2d 93, 100 (N.D.1994). In *van Oosting*, the parties had been married for 24 years prior to divorce. *Id.* at 95. The wife primarily took care of the household and the parties' children. *Id.* Her total outside employment was approximately three months of part-time employment as a sales clerk, and approximately three months of employment as an assistant activities director in a nursing home. *Id.* During the marriage, the wife was diagnosed with multiple sclerosis, and although the disease was in remission at the time of divorce, it was likely to cause more severe physical problems in the future. *Id.* The marriage eventually deteriorated because the husband admitted he had been having an affair. *Id.* Though the parties spoke of reconciliation, the marriage broke down when the husband left the home without telling his wife where he was going or

when he would return. *Id.* The district court found that her ability to earn would be at a low income and would be affected by her disease and that "[a]t the present time she walks with a limp and has poor memory." *Id.* at 100. This Court concluded:

> If trial courts find no immediate need for awarding permanent spousal support, they should retain jurisdiction to do so beyond a temporary award, when facing uncertainty about the need for permanent support.

*Id.* at 101.

[¶ 58] Similar to *van Oosting, Reineke v. Reineke*, 2003 ND 167, ¶¶ 4–10, 670 N.W.2d 841, was another case involving the wife's multiple sclerosis, and the *Ruff–Fischer* guidelines supported the district court's award of rehabilitative spousal support. In *Branson v. Branson*, 411 N.W.2d 395, 398–99 (N.D.1987), also cited by the majority, the *Ruff–Fischer* guidelines supported the award of spousal support to the wife disadvantaged by the marriage, but at the time the husband had no ability to pay.

[¶ 59] The facts of this case are very different from those in *van Oosting, Reineke*, and *Branson*. Here the district court found the *Ruff–Fischer* guidelines were heavily against the award of spousal support. Alonna Norberg has a medical degree and was previously employed as a physician. The district court found she hopes to get her license reinstated in the future. Nevertheless, at the hearing in this matter, one of Alonna Norberg's treating doctors testified she has a problem with overdosing on drugs and had received treatment at a detoxification center for pain medications. Concluding the parties' situation was caused by Alonna Norberg's falsehoods, the district court determined she is not in need of additional monies under the *Ruff–Fischer* guidelines.

[¶ 60] When the totality of the *Ruff–Fischer* guidelines reflect that spousal support is not going to be appropriate in the future, a district court does not err when it does not reserve the issue of future support.

[¶ 61] Under the circumstances of this case and the deferential review this Court gives to spousal support determinations, I would affirm the district court's decision relative to spousal support.

[¶ 62] DALE V. SANDSTROM