Portsmouth Family Division
No. 2010-074

IN THE MATTER OF CYNTHIA RIX AND RAJESH JATHAR

Argued: January 13, 2011
Opinion Issued: February 25, 2011

*Law Offices of Justin P. Nadeau, P.A.*, of Portsmouth (*Justin P. Nadeau* on the brief and orally), for the petitioner.

*Shaheen & Gordon, P.A.*, of Dover (*Jocelyn A. Stachowske* on the brief and orally), for the respondent.

CONBOY, J. The petitioner, Cynthia Rix, appeals from an order recommended by a Marital Master (*Cross*, M.) and approved by the Portsmouth Family Division (*Korbey*, J.), on the grounds that the trial court unsustainably exercised its discretion by permitting the respondent, Rajesh Jathar, to take the parties' child to India for a vacation. We affirm.

The following facts are drawn from the record. The parties are the parents of a seven-year-old son, A.J., born on November 23, 2003, in Brighton, Massachusetts. The petitioner is a citizen of the United States. The respondent is a citizen of India, who has resided in the United States since 1990. He possesses a green card, which is valid until November 2, 2014.

For approximately the past nine years the parties have been involved in an "on-again, off-again" romantic relationship, during which time they have shared a residence, as well as parenting responsibilities for A.J. No court orders regarding parenting responsibilities were previously issued. The respondent is a full-time employee at a computer company in Portsmouth, where he has worked for the past thirteen years. His 2009 earnings were approximately $250,000. He is also the sole owner and investor in two

businesses located in Newmarket and Waltham, Massachusetts. One of these businesses, a hair salon, employs the petitioner.

In May 2009, the parties were experiencing a "rough patch" in their relationship. At around this time, the respondent expressed to the petitioner his desire to take A.J. on vacation with him to India, from late December 2009 into January 2010, to visit with A.J.'s grandmother and his extended family. Although the parties obtained a passport for A.J. shortly after his birth, and together have traveled with A.J. to India on three other occasions, by 2009 A.J.'s passport had expired and the petitioner declined to execute the paperwork necessary to renew it.

On December 14, 2009, the petitioner filed an *ex parte* motion to prevent the respondent from taking A.J. to India. In that motion, the petitioner alleged that: (1) the respondent threatened to take A.J. to India and not return; (2) the respondent threatened the petitioner in an attempt to force her into executing paperwork to obtain a passport for A.J.; (3) the respondent's mother was pressuring him to take A.J. to India and not return; and (4) the petitioner believed the respondent intended to follow through on his threats to take A.J. to India and not return. The trial court issued a temporary order restraining both parties from leaving the state without a court order or written permission from the other party. On December 16, 2009, the respondent filed an objection to the petitioner's *ex parte* motion. The trial court held a hearing on the motion on December 21, 2009, which was conducted by offers of proof.

The petitioner offered that the respondent wanted to take A.J. to India for an undetermined length of time, "possibly a month, possibly longer." The petitioner further offered that because of the parties' troubled relationship it was possible that the respondent would not return with A.J. to the United States, and because the respondent is a citizen of India he could not be compelled to return. The petitioner also offered that the respondent's mother had expressed a strong interest in having the respondent and A.J. live in India, and that the respondent's mother recently visited the United States for five weeks despite the respondent's claim that she had difficulty traveling. Finally, the petitioner offered that A.J. is "currently somewhat afraid" of the respondent, that he had never traveled without his mother, and that such a visit would require his absence from school. The petitioner argued, therefore, that a visit to India with the respondent would not be in A.J.'s best interests, that it posed a risk of irreparable injury, and that any such visit should be permitted only if the petitioner was allowed to travel to India with them.

That same day, the trial court issued its order finding that the petitioner had presented no evidence to suggest that the respondent would not return from India with A.J. and ruling that he was entitled to vacation with A.J. in

India. The trial court found that the respondent had significant ties to the United States, including a high-paying job and ownership of two businesses, and that the parties had traveled with their son to India on three separate occasions and returned without incident. The trial court concluded by ruling that the petitioner was entitled to travel to India with the respondent and A.J., if she wished, at her own expense.

The petitioner moved for reconsideration and an evidentiary hearing, arguing that the trial court failed to consider that India "is a nation that is not a Signatory to the Hague Convention and in fact, is a nation that fails to provide safeguards for American citizens to ensure the return of their children to the United States." The petitioner urged the trial court to "weigh the risk of failure . . . as expressed . . . in her Pro Se Ex Parte Emergency Motion" should the respondent not return with A.J. "against the benefit of the child going on a vacation to visit a grandmother who could as well travel to the United States to visit with her grandson." The petitioner attached to her motion material obtained from the website of the United States Department of State, Bureau of Consular Affairs, relative to parental child abduction in India.

The respondent objected to the motion for reconsideration, arguing that it improperly submitted new evidence, including "alleged and unverified information." In its January 8, 2010 order denying the motion, the trial court reiterated its initial findings following the hearing, and stated, "The court recognizes that mother is concerned about father not returning the child from India, but the objective evidence does *not* cause the court to share her concern." This appeal followed.

At the outset, we note that the respondent argues in his brief that the petitioner failed to preserve the issue of whether "[the petitioner] would not be able to secure the child's return through the Hague Convention on the Civil Aspects of International Child Abduction." However, at oral argument counsel for the respondent conceded that this issue was raised below and was therefore properly preserved. Accordingly, we will consider the petitioner's argument concerning India's status as a signatory to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention).

The petitioner argues that in light of the fact that India is not a signatory to the Hague Convention, the trial court failed to properly weigh the risk of harm to A.J. against the benefits of his traveling to India with the respondent. The petitioner argues that if the respondent fails to return A.J. to the United States it will be extremely difficult, and potentially impossible, for the petitioner to ensure A.J.'s safe return to this country. She asserts that United States court decisions as to parenting are not generally

enforced in India, and because parental child abduction is not a criminal offense there, a parent who has abducted a child to India would not be extradited to the United States.

We will not overturn a trial court's determination regarding an award of visitation except where there has been an unsustainable exercise of discretion. *In the Matter of Kosek & Kosek*, 151 N.H. 722, 724 (2005). RSA 461-A:6 (Supp. 2010) provides the trial court with the authority to determine parental rights and responsibilities and expressly states that in doing so "the court shall be guided by the best interests of the child." The petitioner agrees that this is the applicable standard. While the trial court did not expressly articulate the standard it employed in making its rulings, we assume that the trial court applied the proper standard, *see Grabowski v. Grabowski*, 120 N.H. 745, 748 (1980), and upon review of the record, conclude that the evidence supports the trial court's order.

In determining whether A.J. should be permitted to travel to India in light of the potential risk that the respondent may not return with him, the trial court specifically noted it had heard "no evidence to suggest that father will not return with the child." Indeed, although the petitioner alleged in her *ex parte* motion that the respondent threatened on numerous occasions to not return with A.J. from India, at the hearing on the motion she offered no evidence of any such threats and appeared to have abandoned that argument. In contrast, the respondent demonstrated significant ties to the United States. Moreover, the respondent's undisputed offer indicated that the parties have traveled to India together with their son three times in the past, and the respondent has agreed that the petitioner could accompany him and A.J. on such trips, provided that she obtains her own accommodations.

As for the petitioner's arguments concerning India's status as a non-signatory to the Hague Convention, the respondent did not dispute India's status, and he did not minimize the difficulties the petitioner would have in enforcing a New Hampshire parenting order in India. However, the respondent denied any intention of keeping A.J. in India after the visit, and, as noted above, he pointed to several factors supporting his intention to return, including his substantial ties to the United States. Under these circumstances, we conclude that while a foreign country's Hague Convention signatory status should be a significant factor for the trial court to consider, it cannot, standing alone, be determinative of whether it is in the best interests of a child to travel with a parent outside the country. As the court stated in *Abouzahr v. Matera-Abouzahr*, 824 A.2d 268, 282 (N.J. Super. Ct. App. Div. 2003):

The danger of retention of a child in a country where prospects of retrieving the child and extraditing the wrongful parent are difficult, if not impossible, is a major factor for a court to weigh in ruling upon an application to permit or to restrain out-of-country visitation. But it is not the only factor. In addition to the laws, practices and policies of the foreign nation, a court may consider, among other things, the domicile and roots of the parent seeking such visitation, the reason for the visit, the safety and security of the child, the age and attitude of the child to the visit, the relationship between the parents, the propriety and practicality of a bond or other security and the character and integrity of the parent seeking out-of-country visitation as gleaned from past comments and conduct.

Here, as noted above, the evidence presented by the petitioner gave no indication that the respondent intended to flee to India with A.J. and not return. The respondent has significant financial ties to the United States, and has lived in this country for over twenty years. Further, it was undisputed that A.J. has possessed a passport since shortly after his birth, that the parties have traveled to India with him three times to visit A.J.'s paternal grandmother, and that each time they have returned to the United States. Presumably, if the respondent intended to abduct A.J., he could have taken him to India and not returned at any time prior to the expiration of A.J.'s passport — and he has not done so. Moreover, the respondent invited the petitioner to continue to travel with him and A.J. on their trips to India, provided that she make her own accommodations. For these reasons, and particularly in light of the requirement that the respondent permit the petitioner to accompany him on the trip to India with A.J., we conclude that the trial court did not unsustainably exercise its discretion in permitting the respondent to vacation with A.J. in India. We note that the petitioner did not ask for relief such as the posting of a bond or other security, and we therefore do not undertake an analysis regarding the propriety or practicality of such an order here. *See id.*

*Affirmed.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.